JOHN BAGNI v. CITY OF BRISTOL.

MALTBIE, C. J., AVERY, BROWN and ELLS, Js.[1]

[1] By agreement of counsel the case was argued before and decided by four judges.

Argued June 5—decided July 16, 1940.

*Joseph M. Donovan,* with whom was *Edward J. Quinlan,* for the appellant (plaintiff).

*DeLancey Pelgrift,* for the appellee (defendant).

AVERY, J. The defendant city caused a notice to be published stating that coasting would be permitted upon certain designated streets at certain times. The plaintiff while walking one evening upon a street so designated was struck by an unknown coaster and injured. The plaintiff claimed that the municipality, by designating the street in question as one upon which coasting was permitted, created a nuisance and was liable to one injured thereby. The case was tried to the court and it concluded that coasting on a public street in the absence of prohibition is not in itself unlawful, and that in so far as the city permitted coasting on the street in question it did not create a public nuisance, and rendered judgment for the defendant. The question presented by this appeal is whether these two conclusions of the trial court were legally justified.

The essential facts of the case are these: Peck

Lane forms the western boundary of the Riley Tract
in the southwesterly corner of Bristol about one and
one-quarter to one and one-half miles from the center
of the city. Here is the city's largest school district,
with a population of over one thousand six hundred
children in the public schools. Peck Lane runs down
hill from south to north between Wolcott and Divinity
Streets. It is intersected on its east side by Field
Street about seven hundred feet south of Divinity
Street and upon its west side between the Field Street
intersection and Divinity Street, it is intersected by
Marconi Street, a little used highway. The average
descent of Peck Lane is 9 per cent and for a distance
of approximately two hundred feet south of the Field
Street intersection 12 per cent. There are no side-
walks or electric lights, except at the Divinity Street
intersection, and between Field and Divinity Streets
there are seven residences in all. The width of the
street is four rods, but the traveled part is thirty feet,
and on the day in question the snow had been plowed
off to a width of twenty-six feet.

Prior to January 5, 1938, notices had been published
by authority of the defendant designating, among
others, Peck Lane as a street upon which coasting
would be permitted at certain hours of certain days
of the week. The city authorities caused guards to
be placed at the intersection of Peck Lane with Field
and Divinity Streets and barriers with lanterns to be
placed across the intersections of Field, Divinity, and
Wolcott Streets and caused sand to be placed on Peck
Lane south of its intersection with Divinity Street to
prevent coasters traveling onto the latter street.
Guards were stationed at Field and Divinity Streets
to prevent travelers by vehicle entering Peck Lane,
but such travelers were permitted to enter from Wol-
cott Street and continue northerly down the hill. No

special provision was made to regulate the use of the street by pedestrians. Guards were instructed to see that coasters used the east side for coasting down hill and the west side for walking back up the hill, and that all the coasters from the top were sent away in groups and returned in groups so that no group would be descending while another was walking up the hill. The defendant plowed all of its streets after a snowfall in the same manner, and did nothing to cause or permit an extra accumulation of snow upon the streets designed for coasting. The last plowing of Peck Lane preceding the night of January 5, 1938, was done in the same manner as on all other highways and streets of the city. On the evening of January 5th, there were about seventy-five to one hundred sleds using the street for coasting. The plaintiff, a girl of about seventeen, accompanied by two others, at about 7.45 p.m., left one of the houses on the west side of Peck Lane between Field and Divinity Streets to walk to Field Street for the purpose of visiting a friend there. They walked southerly up the hill on the westerly side of the traveled part of the street. The lane was slippery and dark. The plaintiff observed a coaster whose sled was skidding from side to side of the plowed portion of the road. To avoid the sled, the plaintiff stepped further to the right onto a bank of snow a little higher than the plowed portion of the road, and was immediately struck and injured by a sled coming down the hill. Neither of the companions of the plaintiff saw the sled that struck her either before or after the occurrence.

The claim of the plaintiff seems to be that in authorizing coasting under such circumstances, the defendant created a nuisance as a matter of law and was liable to anyone injured thereby. "Where a municipal corporation creates and maintains a nuisance

42

it is liable for damages to any person suffering special injury therefrom, irrespective of whether the misfeasance or nonfeasance causing the nuisance also constituted negligence. This liability cannot be avoided on the ground that the municipality was exercising governmental functions or powers, even in jurisdictions where, as here, immunity is afforded from liability for negligence in the performance of such functions. 6 McQuillin on Municipal Corporations (2d Ed.) 815 et seq.; 43 Corpus Juris, p. 956. 'If the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law.' *Melker* v. *New York,* 190 N. Y. 481, 488, 83 N. E. 565." *Hoffman* v. *Bristol,* 113 Conn. 386, 389, 155 Atl. 499. Although there are decisions to the contrary, the great weight of authority recognizes that coasting on a public street is not a nuisance per se and the designation of places by a municipality where coasting is permitted does not necessarily and as a matter of law amount to licensing a public nuisance. *Burford* v. *Grand Rapids,* 53 Mich. 98, 103, 18 N. W. 571; *Harris* v. *Des Moines,* 202 Iowa 53, 56, 209 N. W. 454, 46 A. L. R. 1429, 1434; *Jackson* v. *Castle,* 80 Me. 119, 13 Atl. 49; *Hutchinson* v. *Concord,* 41 Vt. 271, 274; *Dudley* v. *Flemingsburg,* 115 Ky. 5, 72 S. W. 327; *Schultz* v. *Milwaukee,* 49 Wis. 254, 258, 5 N. W. 342; 7 McQuillin, Municipal Corporations (2d Ed.) § 2960, p. 136. On the contrary, in *Taylor* v. *Cumberland,* 64 Md. 68, 70, 20 Atl. 1027, and *Dudevoir* v. *Waterville,* 37 Que. Super. Ct. 389, 18 Ann. Cas. 86, it was held that coasting was of itself a nuisance.

General Statutes, § 460, provides as follows: "The mayor of any city . . . may limit or prohibit coasting in the public streets and highways of such city, borough or town, and may issue an order stating such prohibition, or the limit to be observed, and shall cause the same, in the case of a city, to be published in a newspaper of such city. . . . Any person who shall disobey any order so issued and published or posted shall be fined not more than seven dollars." The charter of the city of Bristol contained a provision empowering the city to "regulate coasting and sliding" and there was an ordinance of the city under the charter providing: "Coasting, where allowed. No person shall course or coast upon a sled in any street in said city, except upon such streets as may be designated by the Chief of Police for such purposes." The effect of the statute is to place within the control of the local authority of Bristol the power to prohibit coasting on all or such of its streets as might be determined by the designated authority. In the exercise of its power under the statute, the municipality is performing a governmental function, and is not liable to respond in damages for the way it exercises its power. *Mingo Junction* v. *Sheline*, 130 Ohio St. 34, 196 N. E. 897; *Burford* v. *Grand Rapids,* supra; *Harris* v. *Des Moines,* supra. As stated in the latter case, page 57, "The suppression of coasting on a public street or its permission by the city involves a police power. For the failure to exercise the power or for the non-performance of a duty by the officers and agents of a city in relation to the exercise of such power, the municipality is not liable." See *Bacon* v. *Rocky Hill,* 126 Conn. 402, 409, 11 Atl. (2d) 399. It follows that the mere fact that the defendant permitted coasting upon one of its streets did not of itself as a matter of law render it liable to respond in damages to the plaintiff upon

the theory that it created a nuisance. Whether the action of the city in plowing the street, sanding the same, and otherwise preparing and guarding it for the use of coasters constituted a nuisance as a matter of fact was to be determined, like any other question of fact, by the trial court, taking into consideration all the circumstances. *Balaas* v. *Hartford*, 126 Conn. 510, 514, 12 Atl. (2d) 765. We cannot say upon this record that the trial court was in error in holding as a matter of fact that the defendant did not create a nuisance under the circumstances of this case.

There is no error.

In this opinion the other judges concurred.