Lisa J. **KOUNITZ** and Martin
S. **Kounitz, Plaintiffs,**

v.

Marilyn J. **SLAATTEN, individually and as Westchester County Attorney, Carol Van Scoyoc, individually and as Deputy County Attorney for the County of Westchester, and County of Westchester, N.Y., Defendants.**

No. 95 CV 0038 (BDP).

United States District Court,
S.D. New York.

Sept. 28, 1995.

---

Lovett & Gould, White Plains, NY, for Plaintiffs.

Westchester County Dept. of Law, White Plains, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### FACTS

This action for the violation of civil rights, under 42 U.S.C. § 1983 and 42 U.S.C. § 2000–e et seq., is before this Court on the Defendants' motions to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and to strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and on the Plaintiffs' motion to disqualify the defense counsel, pursuant to *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir.1984).

The facts as alleged in the complaint are as follows: The Plaintiff, Lisa Kounitz ("Kounitz"), was an Assistant County Attorney in the Westchester County Attorney's Office from the fall of 1991 until she was terminated on February 18, 1994. The Defendant, Marilyn Slaatten ("Slaatten"), is the County Attorney and the Defendant, Carol Van Scoyoc ("Van Scoyoc"), is the Deputy County Attorney and was Kounitz's immediate supervisor.

On October 1, 1993, Kounitz suffered a miscarriage and called Van Scoyoc to explain why she would be unable to report to work that day. Van Scoyoc communicated the information to Slaatten. After learning that Kounitz had plans to start a family, Slaatten and Van Scoyoc conspired to prevent her from continuing in her employment with the Westchester County Attorney's Office.

In furtherance of their scheme, in November of 1993, Slaatten and Van Scoyoc denied Kounitz an annual raise on the grounds that her work was unsatisfactory. They destroyed and deleted from the computer's hard drive a memorandum previously written by Van Scoyoc that recommended Kounitz for an annual raise based upon her satisfactory work. In December of 1993, Kounitz's husband, the Plaintiff Martin Kounitz ("Martin Kounitz"), called the Director of Citizen Services for the County of Westchester and complained of Slaatten's incompetence and mistreatment of her staff. The Director of Citizen Services reported Martin Kounitz's allegations to Slaatten.

In January of 1995, Kounitz informed her secretary and Van Scoyoc that she was pregnant. On February 14, 1995, Slaatten advised Kounitz that she would be terminated. The next day, when confronted, Slaatten denied knowledge of Kounitz's pregnancy and offered Kounitz the option of resigning. In retort, Kounitz informed Slaatten that firing pregnant women had consequences. Effective February 18, 1994, Kounitz was terminated.

On April 1, 1994, Kounitz filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex. On January 5, 1995, Kounitz and Martin Kounitz filed this action alleging that the Defendants violated their First Amendment and state law rights to free speech, discriminated against Kounitz in the workplace on the basis of her gender in violation of Title VII and state law, and violated their First Amendment and state law rights to petition the government for redress of their grievances.

The Defendants have moved to dismiss the complaint for failure to state a claim because (1) the complaint does not allege that Kounitz ever exercised her First Amendment rights by speaking on an issue of "public concern"; (2) Martin Kounitz lacks standing because he has not alleged any injury; (3) Kounitz has failed to obtain a right to sue letter; (4) Van Scoyoc is not an "employer" under Title VII or state law; (5) the complaint does not allege that Kounitz attempted to petition the government for redress of her grievances and because Martin Kounitz is not a civil servant; and (6) because Kounitz has elected to pursue an administrative remedy on her state law discrimination claim. The Defendants have also moved to strike the "irrelevant, scandalous, cruel and unfounded allegations" contained in the complaint.

The Plaintiffs have cross-moved to disqualify Slaatten from representing any of the Defendants except herself in her individual capacity on the grounds that her representation creates a conflict of interest.

**DISCUSSION**

1. *First Amendment Free Speech Claims*

   a. *Failure to State a Claim*

The complaint alleges that the Defendants terminated Kounitz in retaliation for the Plaintiffs' alleged exercise of their First Amendment rights. The Plaintiffs argue that Martin Kounitz exercised his First Amendment rights when he complained to the Director of Citizens Services and that Kounitz exercised her First Amendment rights when she told Slaatten that firing pregnant women would have consequences. The Plaintiffs further argue that Kounitz was fired and suffered financial injury as a result of her statement and that Kounitz's termination has chilled Martin Kounitz's exercise of his First Amendment rights and caused him emotional and financial injury.

The Defendants argue that the Plaintiffs' First Amendment claims must be dismissed because (1) Martin Kounitz has not suffered a cognizable injury as a result of his complaint and therefore lacks standing, (2) the complaint does not allege that Kounitz was terminated as a result of her statement, and (3) Martin Kounitz's complaint concerned an employee's personal dispute with an employer not an issue of "public concern" protected by the First Amendment.

The Defendants argue that because Martin Kounitz has not suffered any injury—he has lost neither his job nor his income, nor been threatened with such loss—as a result of his complaint to the Director of Citizen Services, he lacks standing to sue for First Amendment violations. In response, the Plaintiffs argue that Martin Kounitz has been chilled in the exercise of his First Amendment rights by the allegedly retaliatory termination of his wife.

A party seeking to invoke federal jurisdiction bears the burden of alleging facts sufficient to establish standing. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990). The constitutional minimum of standing contains three elements: (1) injury in fact; (2) causation; and (3) redressability. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

An injury in fact is "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 559, 112 S.Ct. at 2136 (quotations omitted). While the fact that a plaintiff's speech has actually been chilled can establish an injury in fact, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972); see also *Spear v. Town of West Hartford,* 954 F.2d 63, 67 (2d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992) (dismissing First Amendment claim for failure to allege chilling effect with sufficient particularity).

Causation requires that the injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 559, 112 S.Ct. at 2136.

Here, the complaint baldly asserts in the most general fashion that Martin Kounitz has been "chilled in the exercise of his First Amendment rights" and that he has suffered "severe emotional distress" and been "damaged financially," but is without any factual allegations regarding a concrete and particularized, actual or imminent injury. The complaint simply does not allege that Martin Kounitz suffered a specific present objective harm or a threat of specific future harm.

Moreover, even if the complaint did allege an injury in fact, it fails to allege any facts demonstrating causation. The complaint does not allege how the Defendants' actions have caused damage to his finances, emotional distress or chilled his exercise of First Amendment rights. Rather, the complaint alleges that Martin Kounitz's wife has been injured in fact through the loss of her employment and salary. It is well-settled, however, that a litigant may not claim relief for injury to a third party. See *Schiavone v. United States,* 766 F.2d 70, 74 (2d Cir.1985) ("judicially self-imposed limits prevent a litigant from resting his claim to relief on the legal rights of some third party"); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) ("A Plaintiff must always have suffered a distinct and palpable injury to himself") (internal quotations and citations omitted). The Defendants' motion to dismiss Martin Kounitz's First Amendment claim against them is granted.

The Defendants are also correct that the complaint does not allege that Kounitz was terminated as a result of her own statement. In fact, the complaint states that Kounitz made the statement that firing a pregnant employee would have consequences on February 15, the day after Slaatten had informed her that she would be terminated. Clearly, Kounitz was not terminated as a result of exercising her First Amendment rights. She spoke only after the adverse employment decision had been made.

The complaint also alleges, however, that Kounitz was terminated in retaliation for Martin Kounitz exercising his First Amendment rights. Although the complaint does not sufficiently allege that Kounitz's own First Amendment rights were violated, it would be anomalous to conclude that the Defendants could avoid Kounitz's allegations on the ground that the actual injury in this

case was inflicted on her rather than on her husband directly.

■ The Court recognizes that as a general rule, a litigant may not assert the rights of others to obtain relief from injury themselves. See *Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2873–74, 49 L.Ed.2d 826 (1976). There is an exception to this general rule, however, when (1) the third party's enjoyment of the right in question is "inextricably bound up with the activity the litigant wishes to pursue," and (2) the third party is unable to assert his or her own right. *Id.* at 113–14, 96 S.Ct. at 2873–74. See also *National Union of Hosp. and Health Care Emp. RWDSU, AFL–CIO v. Carey*, 557 F.2d 278, 281 (2d Cir.1977); *Dangler v. Yorktown Central Schools*, 771 F.Supp. 625, 630 (S.D.N.Y.1991); *Romano v. Harrington*, 664 F.Supp. 675, 681 (E.D.N.Y.1987).

Here, the Plaintiffs have alleged (1) that Kounitz was fired as a result of Martin Kounitz's complaint to the Director of Citizen Services, and thus arguably, that Martin Kounitz's enjoyment of his First Amendment rights is inextricably bound up with Kounitz's interest in continued employment at the County Attorney's Office. In addition, on the basis of the allegations in the complaint, the Court has already determined that Martin Kounitz does not have standing to assert his own right because he has not suffered an injury in fact. Accordingly, the Court finds that Kounitz has stated a First Amendment claim for relief against the Defendants.

### b. *Speech on a Matter of Public Concern*

The Defendants also argue that the Plaintiffs have failed to state a First Amendment claim because Martin Kounitz's alleged statements, for which Slaatten allegedly retaliated against his wife, were not about a matter of public concern. The complaint alleges that Martin Kounitz spoke to the Director of Citizen Services about "Slaatten's incompetent management of the County Attorney's Office" and the high turnover and decline in quality of the professional staff.

Because, in retaliatory termination cases, the Supreme Court has held that determining whether speech involves a matter of public concern entails an inquiry into the "content, form, and context of a given statement, as revealed by the whole record," *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983), whether Martin Kounitz's statements involved a matter of "public concern" must await the development of a record.

### 2. *Right to Sue Letter*

■ The receipt of a right to sue letter is a statutory prerequisite to bringing a Title VII action in federal court, and "is subject to waiver, estoppel, or tolling only upon a showing by plaintiff of a sufficient reason for such equitable modification." See *Hladki v. Jeffrey's Consolidated, Ltd.*, 652 F.Supp. 388, 392 (E.D.N.Y.1987). The Defendants argue that Kounitz has failed to allege a sufficient reason for equitable modification of this statutory prerequisite.

Since filing this action, Kounitz has received a right to sue letter, dated February 17, 1995. Courts have held that receipt of a right to sue letter subsequent to commencement of a Title VII action and while the action is still pending satisfies the statutory prerequisite that a plaintiff obtain notice of the right to sue before filing a civil action under Title VII. See *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1059 n. 4 (2d Cir.1982), *vacated and remanded on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *People v. Holiday Inns*, 656 F.Supp. 675, 683 (W.D.N.Y.1984). Accordingly, the Defendants' motion to dismiss the Title VII claim is denied.

### 3. *Failure to State a Claim against Van Scoyoc*

■ The Defendants make two arguments in support of their assertion that the complaint fails to state a claim against Van Scoyoc. First, they argue that because Van Scoyoc did not have the power to appoint or terminate Kounitz nor to grant or deny her annual raise, she is not an "employer" within the meaning of Title VII[1] or under New

---

1. Title VII defines "employer" as "a person engaged in an industry affecting commerce, who

has fifteen or more employees for each working day in each of twenty or more calendar weeks in

York State Executive Law § 296,[2] and accordingly is not subject to liability. Second, they argue that, under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.

At issue is whether Van Scoyoc may be individually liable for discrimination under Title VII. The division among the federal circuit and district courts over the issue of individual liability under Title VII is well documented. See Lamberson, Personal Liability for Violations of Title VII: Thirty Years of Indecision, 46 Baylor L.Rev. 419 (1994). The Court finds it unnecessary to rehash all the arguments for and against the various positions taken by the courts, but refers the parties to the discussion in *Schaffer v. Ames Dept. Stores,* 889 F.Supp. 41 (D.Conn.1995).

On this issue, the Court finds persuasive the reasoning in *Coraggio v. Time, Inc.,* 1995 WL 242047 at *7–*9, 1995 U.S. Dist. LEXIS 5399 (S.D.N.Y.*22–*27), and finds that Van Scoyoc cannot be held liable in her individual capacity under Title VII, but can be named as a defendant in her representative or official capacity because the complaint alleges that she participated in the decision making process that formed the basis of the discrimination against Kounitz, making Van Scoyoc an "agent" of her employer under Title VII. See *Bostick v. Rappleyea,* 629 F.Supp. 1328, 1334 (N.D.N.Y.1985) *aff'd sub nom. Bostick v. Cochrane,* 907 F.2d 144 (2d Cir.1990) (citation and internal quotations omitted). The Defendants' motion to dismiss for failure to state a claim against Van Scoyoc on the basis that she is not an "employer" is denied.

#### 4. *State Law Right of Appeal not to be Denied*

█ The Plaintiffs claim that they have been deprived of their right to petition the government for redress of their grievances,

under the New York Civil Rights Law § 15 ("§ 15").[3] The Defendants argue that these claims must be dismissed because (1) Kounitz never appealed to the government for redress of a grievance and (2) Martin Kounitz, although he complained to the Director of Citizens Service, was not a civil servant and therefore does not fall within the purview of § 15.

In response, the Plaintiffs argue that (1) Martin Kounitz acted as Kounitz's agent and husband when he complained to the Director of Citizens Service, and (2) that because the grievance of which he complained was widespread, it was "on account of employment in the civil service."

The complaint does not allege that Martin Kounitz was acting as Kounitz's agent when he complained to the Director of Citizen Services. In addition, the Plaintiffs' argument that the grievance, as opposed to the deprivation of the right, be "on account of employment in the civil service" simply misconstrues the statute.

Because the complaint does not allege (1) that Kounitz appealed to the government for redress of her grievances, (2) that Martin Kounitz was acting as her agent when he complained to the Director of Citizen Services, nor (3) that Martin Kounitz was deprived of his right on account of employment in the civil service, the Defendants' motion to dismiss the claims under § 15 is granted.

#### 5. *The Election of Remedies Provision*

█ In their affidavit, the Defendants assert that Kounitz filed her discrimination complaint with both the EEOC and the New York State Division of Human Rights ("the State Division"). They attach to their motion, as Exhibit A, the Charge of Discrimination filed with the State Division on April 1, 1994. According to the Defendants, because Kounitz has elected to pursue an administra-

---

2. State law defines "employer" as "not includ[ing] any employer with fewer than four persons in his employ." New York State Executive Law § 292.

the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b).

3. Section 15 of the New York Civil Rights Law provides: Notwithstanding the provision of any general or special law to the contrary, a citizen shall not be deprived of the right to appeal to the legislature, or to any public officer, board, commission or other public body, for the redress of grievances, on account of employment in the civil service of the state or any of its civil divisions or cities.

tive remedy with the State Division, a state court claim is barred, and thus precludes this Court from exercising pendant jurisdiction over Kounitz's state law discrimination claim. At oral argument, however, Kounitz asserted that she did not file her claim directly with the State Division, but rather with the EEOC which in turn referred the charge to the State Division.

The Defendants rely on an old version of the election of remedies statute which foreclosed a claim in a court of appropriate jurisdiction if the complainant had filed a charge with the State Division. The amended version of New York State Executive Law, § 297(9) permits a complainant to pursue a remedy in a court of appropriate jurisdiction if, as in the instant action, the charge was originally filed with the EEOC which then in turn referred the charge to the State Divi-

sion.[4]  See *Dirschel v. Speck,* 1994 WL 330262 at *4 (S.D.N.Y.1994). Kounitz's explanation at oral argument makes it plain that she has satisfied the statutory prerequisites of § 297(9). Accordingly, the Defendants' motion to dismiss Kounitz's state law discrimination claim is denied.

### 6. *Motion to Strike*

■■■ The Defendants argue that three sentences and one paragraph of the complaint should be stricken from the complaint, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure,[5] on the grounds that they are irrelevant, scandalous, cruel and unfounded. The allegations at issue allege that Slaatten suffers from a personality disorder, has a deep-seated hatred of heterosexual, fertile, female lawyers, and emotionally abuses her staff with deadlines and obscenities.[6]

---

4. Section 297(9) provides, in pertinent part: Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction ..., unless such person had filed a complaint hereunder or with any local commission on human rights ..., provided that, where the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed. *A complaint filed by the equal opportunity commission to comply with the requirements of 42 U.S.C. 2000e–5(c) ... shall not constitute the filing of a complaint within the meaning of this subdivision.* No person who has initiated any action in a court of competent jurisdiction or who has an action pending before any administrative agency under any other law of the state based upon an act which would be an unlawful discriminatory practice under this article, may file a complaint with respect to the same grievance under this section or under section two hundred ninety-six-a. N.Y.Exec.Law § 297(9) (McKinney 1993) (emphasis added).

5. Rule 12(f) provides, in pertinent part: the court may order stricken from any pleading any ... immaterial, impertinent, or scandalous matter.

6. (1) The last sentence of paragraph four states that "Slaatten suffers from a personality disorder and/or psychiatric disorder by reason of which she viciously degrades subordinate staff, shouts obscenities at them, punitively assigns them burdensome work assignments with impossible deadlines and then berates and punishes them when deadlines cannot be met, and has so incompetently administered the Office of the County Attorney that professional and support staff have for years been resigning from that Office

(with and without having first secured other employment) simply to put an end to Slaatten's abusive and wretched mistreatment."

(2) The third sentence of paragraph eleven states that "Slaatten ... has a deep-seated hatred of heterosexual female attorneys on her staff who are capable of bearing children and who wish to pursue their professional legal career notwithstanding the fact that they also wish to raise a family."

(3) The last sentence of paragraph twelve states that "Slaatten's animus towards Plaintiff was in substantial respect motivated by jealousy resulting from her long-standing frustrated desire to have had children of her own."

(4) Paragraph 22 states that "In fact Martin's opinion and belief was correctly grounded in fact since:
   a. Slaatten suffers from a severe personality disorder and/or psychiatric disorder by reason of which she is compulsively vicious to subordinate staff, both professional and nonprofessional.
   b. Slaatten is an incompetent and incapable of properly managing the County Attorney's Office and supervising subordinate staff.
   c. Slaatten has repeatedly driven employees in her office to summarily resign rather than continue being subjected to emotional torture which she inflicts upon anyone who does not passively submit to her bizarre and usually degrading treatment.
   d. Slaatten's incompetence has caused an extremely high turnover rate in the professional staff, crippling the County Attorney's Office, depriving the constantly newly hired attorneys of any experienced attorneys to whom they can turn for guidance and/or training, and grossly impairing the quality of

The Defendants also direct the Court to Rule 11 of the Federal Rules of Civil Procedure which creates an objective standard of reasonable inquiry into the factual soundness of every pleading, motion, and other paper signed by an attorney in an action.[7]

In *Burger v. Health Ins. Plan of Greater New York*, 684 F.Supp. 46 (S.D.N.Y.1988), the Court explained that to decide properly a motion to strike, the issues must first be framed. Once the issues are framed, the court turns to the particular allegations, keeping in mind that motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute. *Id.*, 684 F.Supp. at 52 (citation and internal quotations omitted).

Here, the issues are framed as claims based on gender discrimination, First Amendment violations and denial of the right to petition the government for redress of one's grievances. Slaatten's alleged use of profanity and professional demands on her staff have no bearing whatsoever on whether she discriminated against Kounitz on the basis of gender or violated her First Amendment rights. Whether Martin Kounitz's complaints to the Director of Citizen Services were true is not material or pertinent to a First Amendment analysis. At issue is whether Martin Kounitz made the statements, whether they involved a matter of public concern and whether Kounitz suffered injury as a consequence of exercising Martin Kounitz exercising First Amendment rights. In addition, Slaatten's alleged use of profanity and professional demands on her staff

have no bearing on whether Kounitz was discriminated against on the basis of her gender. Accordingly, because the allegations in paragraph 22 and the last sentence of paragraph four are immaterial and impertinent as well as inflammatory and scandalous, the Defendants' motion to strike them from the complaint is granted.

■ The Defendants have also moved to strike the third sentence of paragraph 11 and the last sentence of paragraph 12 which allege that Slaatten has a deep-seated hatred of heterosexual, fertile, female attorneys that results from her long-standing frustrated desire to have children of her own. Because the motivation for Slaatten's alleged discrimination against Kounitz may have some bearing on the Title VII and state law discrimination claims, the Defendants' motion to strike these allegations is denied. These allegations are more appropriately tested at a later date against the command of Rule 11.

### 7. *Motion to Disqualify Defense Counsel*

All the Defendants in this action are represented by Slaatten. The Plaintiffs have cross-moved to disqualify Slaatten from continued joint representation claiming an inherent conflict of interest between the defense of the County and the individual Defendants, and between Slaatten and Van Scoyoc. The basis of the Plaintiff's motion is *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984), in which the court ordered disqualification of the County Attorney, who acted as defense counsel for an individual police officer and his county employer.

---

representation accorded to the County of Westchester and its officials, and *inter alia,*
  e. Slaatten is known, both within and without the Office of the County Attorney, to be an incompetent who curses and screams at her subordinates, publicly denigrates them, purposefully plays so-called "mind games" with them by ordering them to meet with her in her office and then refusing to speak with them and/or assigning absurd projects the day before a holiday weekend and ordering that they be completed in accordance with an impossible deadline and/or ordering professional staff to report to the office during their vacation only to be required to perform a project which did not then need to be performed, and otherwise cruelly abuses her

power and authority with the sole and exclusive objective of causing injury to her staff.

7. Rule 11 of the Federal Rules of Civil Procedure which states that

[b]y presenting to the court ... a pleading ..., an attorney is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass ... (2) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

In *Dunton*, the Second Circuit explained how, prior to 1978, an employee's representation by the County Attorney would not have caused a conflict because municipalities were not "persons" subject to § 1983 liability. See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, a municipality had no reason to give an employee less than full representation. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), however, the Supreme Court held that municipalities could be held liable under § 1983 for employees' actions taken pursuant to municipal policy. "After Monell the interests of a municipality and its employee as defendants in a section 1983 action are in conflict." *Dunton*, 729 F.2d at 907. A municipality may avoid liability by showing that the employee was not acting within the scope of her official duties, because her unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that she was acting within the scope of her official duties. If she can show that her actions were pursuant to an official policy, she can at least shift part of her liability to the municipality. If she is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a § 1983 action. *Dunton*, 729 F.2d at 907.

The Court did not distinguish between actual and merely potential conflicts of interest. It held that "[a]fter Monell the interests of a municipality and its employee as defendants in a section 1983 action are in conflict." *Dunton*, 729 F.2d at 907. It explained that "because of the imminent threat of a serious conflict, disqualification would have been appropriate ... even before any proceedings began." *Id.*, 729 F.2d at 907. In addition, the Court held that, because a district court is under a continuing obligation to supervise members of its Bar and to assure litigants a fair trial, it has a duty to ensure that a client fully appreciates a potential or actual conflict of interest situation. *Dunton*, 729 F.2d at 908–09. Finally, the Court held that the plaintiff's attorney should have called the problem to the attention of the court.

As in *Dunton*, the Plaintiffs in this case have brought § 1983 claims against the County, and the County Attorney and Deputy County Attorney in both their individual and official capacities. Because both Slaatten and Van Scoyoc in their individual capacities are represented by the County Attorney, according to the Second Circuit's ruling in *Dunton*, the interests of the County and the Defendants in their individual capacities are in conflict. *Dunton*, 729 F.2d at 907.

In *Dunton*, the Second Circuit assumed without deciding that a district court could allow a litigant to waive his objection to joint representation in a conflict of interest situation. *Dunton*, 729 F.2d at 909 n. 5. In subsequent cases, Courts have undertaken their *Dunton* duty to ascertain whether a litigant has been notified of and fully understands a conflict of interest situation and then held that the litigant could choose to continue to retain the municipality's attorney as his counsel. See, e.g., *Ricciuti v. New York City Transit Authority*, 796 F.Supp. 84, 87–88 (S.D.N.Y.1992); *Manganella v. Keyes*, 613 F.Supp. 795, 799 (D.Conn.1985).

Accordingly, the Plaintiffs' motion to disqualify defense counsel will be granted unless, within ten days, the County Attorney provides an affidavit from either the municipality stating that it does not deny that the individual defendants were acting within the scope of their public employment and in the discharge of their duties, see, e.g., *Smith v. City of New York*, 611 F.Supp. 1080, 1088 (S.D.N.Y.1985), or from each individual defendant stating that she fully understands the nature of the conflict inherent in joint representation of herself in her individual capacity and of the municipality and the conflict inherent in the County Attorney's representation of both herself and Van Scoyoc individually and chooses to continue to retain the County Attorney as counsel.

In conclusion, (1) the Defendants' motion to dismiss Martin Kounitz's First Amendment claim is granted; (2) the Defendants' motion to dismiss Kounitz's First Amendment claim is denied; (3) the Defendants' motion to dismiss the Title VII claim is denied; (4) the Defendants' motion to dismiss

the Title VII and state law claims against Van Scoyoc is denied; (5) the Defendants' motion to dismiss the claims under the New York Civil Rights Law is granted; (6) the Defendants' motion to dismiss the state law discrimination claims is denied; (7) the Defendants' motion to strike the pleadings is granted in part; and (8) the Plaintiffs' motion to disqualify defense counsel is denied unless the Defendants' fail to submit the affidavits as directed within 10 days.

SO ORDERED.