**Pauline W. GADBOIS, Plaintiff,**

v.

**ROCK–TENN CO., MILL DIVISION, INC., Defendant.**

**No. 2:96–CV–176.**

United States District Court, D. Vermont.

Nov. 5, 1997.

Mary L. Desautels, Law Offices of Anthony B. Lamb, Burlington, VT, for Plaintiff.

Heather Briggs, Downs, Rachlin & Martin, P.C., Christine M. MacIver, Larry E. Forrester, Smith, Currie & Hancock, Atlanta, GA, for Defendant.

## OPINION AND ORDER

SESSIONS, District Judge.

Plaintiff Pauline Gadbois ("Gadbois") has sued her former employer, Defendant Rock–Tenn Co., Mill Division, Inc. ("Rock–Tenn") alleging sex discrimination, age discrimination, and breach of the implied covenant of good faith and fair dealing in connection with her discharge from employment. Gadbois has requested a jury trial. Rock–Tenn has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (Paper 18). For the reasons that follow, Rock–Tenn's Motion to Dismiss is denied, and its Motion for Summary Judgment is denied in part and granted in part.

### Factual Background

For the purpose of these motions, the Court assumes the following facts are true. Gadbois was employed in the Accounting De-

partment at the Missisquoi Mill ("Mill") for twenty-five years under five different ownerships. In March 1991, the Mill was purchased by Rock–Tenn, a Tennessee corporation with its home office in the state of Georgia.

Rock–Tenn reduced the overall staff from 205 to 115 employees soon after purchasing the Mill. At that time, Jim Hansen, the Division Manager, consulted with Tammy Ayyoub, the Accounting Manager, and decided to maintain the accounting department at full staff. Ayyoub told Gadbois that as long as she was in a position that Rock–Tenn needed, her job was secure. At the time, the Accounting Department consisted of Ayyoub (Accounting Manager), Gadbois (Senior Accountant), Jeanette Rice (Receptionist), and Sharan Kalahan (Accounts Payable/Billing).

The Mill continued to struggle financially even with the significant reduction in staff. To save money, General Manager Tom Pease eliminated three positions. Greg Lanternier, 34, a Project Engineer, and Wanda Clossey, 29, an Environmental Engineer, were offered positions outside the Mill. Greg Pedrick, 29, an Electrical Engineer, was terminated when no other position could be found for him. Pedrick's severance package included two months full salary and insurance, with an additional two months provided to him when he did not find work within the first eight weeks of being unemployed. In all of these cases, Pease consulted with the male department supervisors and the head of Human Resources, Christina Casey, before acting on the transfers and termination.

In December 1992, Ken Brian, aged 53, replaced Pease as General Manager. Shortly thereafter Hansen advised Brian that the Mill staff needed further reduction. Hansen instructed Brian to make the termination decisions without supervisor input. A week later Brian received approval from Hansen to dismiss three employees: Technical Director Larry Wood, 44, and the two oldest employees in the Accounting Department, Jeanette Rice, 55, and Gadbois, 47. Wood declined an offer to stay on as Office Manager and resigned from the Mill.

On April 15, 1993, Gadbois and Rice were terminated without warning or notice. Brian and Hansen told Gadbois that her termination had nothing to do with performance. Gadbois' severance package consisted of what she was told was the company maximum of thirteen weeks of severance pay and insurance coverage.

Immediately after Gadbois and Rice had been terminated, Brian called Ayyoub, Gadbois' supervisor, and notified her. At a meeting with office employees immediately following the terminations, Hansen informed the group of the staffing changes. When asked why Ayyoub or Casey had not been consulted, Hansen replied that it was because "they didn't want you ladies to have to make this decision."

After Gadbois and Rice were dismissed, Brian and Hansen moved Ayyoub to the position of Office Manager and transferred Kathy Swallick, aged 46, from Purchasing to Accounting. Swallick was to replace Ayyoub as Accounting Manager, continue her previous duties as assistant to the head of purchasing, and absorb Gadbois' duties.

Brian made the decision to terminate Gadbois and transfer Swallick with no knowledge of Gadbois' or Swallick's relative education, seniority, performance at their jobs, or even whether Swallick was capable of performing her new duties. Unlike the process used in previous terminations, Brian, as instructed by Hansen, consulted neither Casey, as head of Human Resources, nor the female supervisors of the Purchasing and Accounting Departments regarding the pending changes. If Ayyoub had been consulted she would have recommended retaining Gadbois.

In mid-October, Gadbois was offered an office position in Rock–Tenn's new recycling department. Despite the pay decrease of $15,000 per year, Gadbois took the job. She resigned after four days, citing the emotional strain of working for the company which had terminated her. She subsequently applied to four other employers without success. Gadbois currently works as an administrative assistant for her husband.

An attorney contacted the Vermont Attorney General's Office on behalf of Gadbois on September 28, 1993. Gadbois then contacted the Attorney General's Office on October 6

and October 7, 1993, and spoke with an investigator on October 7 and November 5, 1993. Gadbois filed a discrimination complaint with the EEOC on February 4, 1993, 295 days after her termination. At the time she was not represented by counsel. Pursuant to a worksharing agreement between the EEOC and the Vermont Attorney General, the EEOC sent notification to the Attorney General of Gadbois' charge and the EEOC's intent to be the initial investigator of the claim. The notice to the Attorney General was sent February 11, 1994, 302 days after Gadbois' termination. Gadbois filed suit in Vermont State court on April 12, 1996. She received a right to sue letter from the EEOC on October 17, 1996.

Gadbois alleges violations of Title VII (Count I), the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e to –17, the Age Discrimination in Employment Act of 1967 (ADEA) (Count II) § 7(d), 29 U.S.C. § 621–634, the Vermont Fair Employment Practices Act (FEPA) (Count III), 21 V.S.A. § 495, Vt. Stat. Ann. tit. 21, § 495 (1987 & Supp.1996), and contends that her termination violates the implied covenant of good faith and fair dealing (Count IV). Following removal of the suit to this Court, Rock–Tenn moved for dismissal for defective complaint, or in the alternative, summary judgment on all counts of the complaint.

### Analysis

#### I. Motion to Dismiss, Defective Complaint

A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) unless it appears "beyond doubt that the plaintiff can prove no set of facts supporting its claim that would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The complaint's allegations are construed in the light most favorable to the plaintiff and accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1970).

There is no statement in Gadbois's complaint concerning her exhaustion of administrative remedies and receipt of a requisite right to sue letter from the EEOC. Similarly, the complaint does not inform the Court that Rock–Tenn is subject to Title VII,

the ADEA, or FEPA. Thus the plaintiff's complaint fails to comply with Fed.R.Civ.P. 8(a)(2), which requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Failure to allege a sufficiently precise cause of action need not prove fatal to a case. Leave to amend pleadings "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a); *see Blessing v. Lancaster County,* 609 F.Supp. 485, 486 (E.D.Pa.1985) (plaintiff entitled to amend complaint to allege timely filed EEOC charge and subsequent receipt of right to sue letter). The Plaintiff is hereby given thirty days to amend her complaint to allege that she has exhausted her administrative remedies, and that Rock–Tenn is an employer for the purposes of federal and state statutes. The Defendant's Motion to Dismiss is denied without prejudice to renew should plaintiff fail to amend her complaint.

#### II. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Id.,* at 323, 106 S.Ct. at 2552–53. The party opposing summary judgment may not rest on its pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513, (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Unless there is sufficient evidence to enable a jury to return a verdict in favor of the nonmoving party, there is no issue for trial. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

### A. *Untimely Filing*

 In a deferral state such as Vermont, a plaintiff who has initially instituted proceedings with a state agency is allowed three hundred (300) days after a discriminatory act to file a charge of age or sex discrimination with the EEOC. 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e); *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 750 (3rd Cir.1983). Pursuant to a worksharing agreement between the Vermont Attorney General and the EEOC, filing with the EEOC is considered to institute state proceedings for the purpose of meeting the federal filing requirements. *Shockley v. Vt. State Colleges,* 793 F.2d 478, 481 (2d Cir.1986). *See also, Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 312 (2d Cir.1996) (pursuant to worksharing agreement, filing with the EEOC is considered instituting and terminating state proceedings). Since Gadbois filed her claim with the EEOC 295 days after her termination, she has met the timely filing requirements of Title VII and the ADEA.

### B. *Failure to Obtain an Right to Sue Letter*

 The receipt of a right to sue letter is a condition precedent to bringing a Title VII action in federal court and "is subject to waiver, estoppel, or tolling only upon a showing by plaintiff of a sufficient reason for such equitable modification." *Kounitz v. Slaatten,* 901 F.Supp. 650, 655 (S.D.N.Y.1995), (quoting *Hladki v. Jeffrey's Consol., Ltd.,* 652 F.Supp. 388, 392 (E.D.N.Y.1987)). Courts have held however, that receipt of a right to sue letter while an action is pending satisfies the statutory prerequisite. *Kounitz,* 901 F.Supp. at 655, ( citing *Spirt v. Teachers Ins. & Annuity Ass'n,* 691 F.2d 1054, 1059 n. 4 (2d Cir.1982)), vacated and remanded on other grounds, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983); *Rauh v. Coyne,* 744 F.Supp. 1186, 1189 (D.D.C.1990); *Kohn v. GTE North. Inc.,* 754 F.Supp. 563, 570 (S.D.Ohio 1990) (entitlement of right to sue notice, rather than actual issuance, was prerequisite to jurisdiction of

federal court); *Wilburn v. Dial Corp.,* 724 F.Supp. 530, 536 (W.D.Tenn.1989) (receipt of right to sue notice cured premature filing of discrimination complaint); *Diem v. City and County of San Francisco,* 686 F.Supp. 806, 810 (N.D.Cal.1988); *Kirwin v. New York State Office of Mental Health,* 665 F.Supp. 1034, 1038 (E.D.N.Y.1987) (issuance of notice of right to sue prior to trial might cure defects which arguably exist); *People of N.Y. by Abrams v. Holiday Inns. Inc.,* 656 F.Supp. 675, 683 (W.D.N.Y.1984). But see, *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196, (1984) (per curiam) (Supreme Court refused to modify the filing requirements of Title VII absent showing of equitable reason for doing so); *Hladki,* 652 F.Supp. at 392 (claim dismissed without prejudice where plaintiff not in receipt of an EEOC right to sue letter failed to allege she was entitled to equitable modification). Although Gadbois did not receive a right to sue letter before filing her complaint in state court, her subsequent receipt of the requisite letter during the pendency of this case has cured any defect caused by the premature filing of her claim.

### C. *Failure to Raise ADEA claim.*

 Gadbois' federal complaint alleged both age and sex discrimination but her written charge to the EEOC did not report that age animus was a factor in her termination. Ordinarily, a plaintiff must amend the original EEOC charge in order to include new allegations of discrimination. *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 105 (2d Cir.1978); *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

 Where claims of discrimination were not made in the original EEOC charge, filing an amendment is unnecessary if the conduct alleged in the judicial complaint would fall within the "scope of the EEOC investigation which can reasonably be expected to grow out of the [EEOC] charge of discrimination." *Smith,* 571 F.2d at 107 n. 10; *Silver,* 602 F.2d at 1090. Since the EEOC charge is rarely drafted by an attorney, it is interpreted broadly in order to

pursue the elimination of discriminatory practices and policies. *Butts v. City of New York Dept. of Housing Preservation and Dev.*, 990 F.2d 1397, 1402 (2d Cir.1993). The charge merely provides the EEOC with a "jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices." *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 (1st Cir.1990) ( citing *E.E.O.C. v. Huttig Sash & Door Co.*, 511 F.2d 453, 455 (5th Cir.1975)).

▉▉▉▉Courts have not found age and sex discrimination reasonably related where plaintiffs have failed to allege facts in their EEOC charge which would indicate that age may have been a element in the alleged discrimination by the employers. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996) (although age discrimination claim arose from same facts and circumstances as previously filed sex discrimination charge, court dismissed ADEA claim because original charge never mentioned age or alleged age was factor in denial of a promotion); *Pejic v. Hughes Helicopters Inc.*, 840 F.2d 667, 675 (9th Cir.1988) (original charge contained no hint of age discrimination); *Conroy v. Boston Edison Co.*, 758 F.Supp. 54, 60 (D.Mass.1991) (reasonable EEOC investigation would not be expected to uncover discrimination where sex discrimination complaint did not state age or indicate length of employment). However, "where the factual statement in a plaintiff's written charge should have alerted the agency to an alternative basis of discrimination and should have been investigated, the plaintiff will be allowed to allege this claim in his or her complaint regardless of whether it was actually investigated." *Conroy*, 758 F.Supp. at 58.

Construing Gadbois' charge liberally, her claim of age discrimination is reasonably related to her EEOC charge of sex discrimination. Although the charge itself did not include a claim of age discrimination, Gadbois' accompanying EEOC affidavit detailed the breadth of her experience at the Mill, referred to her twenty-five years of service several times, and outlined Rock–Tenn's decision to hire her back at $15,000 a year less than she was previously making. A reason-

able EEOC investigator having these facts at his or her disposal would be alerted to and investigate the issue of age discrimination. The Court concludes that Gadbois' claim of age discrimination is reasonably related to her original charge of gender discrimination and thus her age discrimination claim will not be dismissed for failure to raise the issue to the EEOC.

### D. *Discrimination*

▉▉▉▉ The ADEA and Vermont FEPA are analyzed under the same framework as Title VII. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985); *Gallipo v. City of Rutland*, 163 Vt. 83, 89, 656 A.2d 635, 640 (1994). In evaluating claims brought under Title VII, the Court follows the allocation of burdens of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The plaintiff bears the initial burden of presenting a prima facie case by demonstrating: (1) she was a member of a protected class; (2) she was performing satisfactorily; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination. *Id.; Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir.1995). The plaintiff's initial burden in both age and gender discrimination suits is *de minimus*. *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir.1997); *Cronin*, 46 F.3d at 203–04.

Once a plaintiff has established a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the plaintiff. *Cronin*, 46 F.3d at 204. If an employer articulates such a reason, the onus is once again on the plaintiff, to show either that the employer's proffered explanation was pretextual, *Luciano*, 110 F.3d at 218, or establish that a discriminatory purpose was a determinative factor in the discharge of the plaintiff. *Cronin*, 46 F.3d at 204.

#### 1. *Age Discrimination*

▉▉▉▉ Under the ADEA, an employer may not discharge an employee by reason of age if that employee is between 40 and 70 years old. 29 U.S.C. §§ 623(a)(1), 631(a). A finder

of fact may draw an inference of age discrimination if an employer has found new positions for younger, but not older employees during downsizing. *Id.*

 Upon termination, nearly all younger employees were offered the opportunity to transfer to comparable jobs within Rock–Tenn. In contrast, Gadbois was not contacted by Rock–Tenn regarding alternative employment until six months after her discharge, an offer which included a pay decrease of $15,000 per year.[1] The Court finds this sufficient evidence of a discharge under circumstances giving rise to an inference of age discrimination.

 Rock–Tenn has rebutted the presumption of discrimination by articulating a legitimate, non-discriminatory reason for Gadbois' discharge, namely downsizing. In downsizing circumstances, a plaintiff need demonstrate only that a genuine issue exists as to whether, despite the employer's ostensible rationale and overall operations, age was a motivating factor in its decision to terminate her position. *Id.*

With all permissible inferences drawn in favor of Gadbois, Rock–Tenn's termination of the two oldest employees in the Accounting Department with no immediate offer of alternative employment coupled with Rock–Tenn's decision to hire Gadbois back at $15,000 less than her previous salary six months after she was discharged, creates a genuine issue of material fact as to whether age was a motivating factor in Rock–Tenn's decision to terminate Gadbois.

Accordingly, Rock–Tenn's Motion for Summary Judgment on the claim of age discrimination is denied.

### 2. Gender Discrimination

 Under the *McDonnell Douglas* standard a plaintiff ordinarily must demonstrate that she was treated less favorably than comparable male employees under circumstances from which a gender based motive can be inferred. *McDonnell Douglas,* 411 U.S. at 802–804, 93 S.Ct. at 1824–25 (1973); *Luciano,* 110 F.3d at 215, (*citing Montana v. First Federal Savings & Loan Ass'n of Rochester,* 869 F.2d 100, 104 (2d Cir.1989)). The Second Circuit recognizes the *McDonnell Douglas* standard is "not necessarily applicable in every respect to differing factual situations." *Montana,* 869 F.2d at 104 (*quoting McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13). Rather than support a claim with direct evidence of discrimination, a plaintiff has been permitted to show statistical evidence or circumstantial evidence supporting an inference of discrimination. *Montana,* 869 F.2d at 104. In this case the Court finds a flexible application of the *McDonnell Douglas* standard to be appropriate in determining whether the circumstances surrounding Rock–Tenn's dismissal of Gadbois creates an inference of gender discrimination.

Gadbois, as a female, is a member of the protected class and was performing satisfactorily as a Senior Accountant at the time of her discharge. However, given the small size of the office, there are no comparable employees with whom to compare treatment by Rock–Tenn, and certainly, any employee terminated from the Accounting Department would have been female. Therefore, in order to determine if Rock–Tenn was discriminatory in its treatment of Gadbois on the basis of her sex, it is necessary to explore Rock–Tenn's differential treatment of the exclusively female Accounting Department.

There is no dispute that employees with male managers were treated differently than Gadbois. Not only were the male supervisors of engineers and managers consulted by Rock–Tenn management before their departments were downsized, but the terminated employees were given the immediate option to transfer or relocate. When an alternative job was not found for a male engineer, he was offered a better severance package than that offered to Gadbois. This circumstantial

---

1. An employer may discharge an employee for reasons associated with age such as years of service, *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 1705–06, 123 L.Ed.2d 338 (1993), or salary. *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 117 (2d Cir.1991), without committing age discrimination. However, the Supreme Court has not precluded the possibility that an employer's decision to target senior employees for discharge is not also evidence of age discrimination. *Hazen,* 507 U.S. at 612–613, 113 S.Ct. at 1707.

evidence supports Gadbois' contention that employees in exclusively female departments were treated differently from those who worked in departments managed by men.

▆ The differential treatment of departments is supported by Hansen's comment to Gadbois' female supervisors that he did not want to involve "you ladies" in termination decisions. An isolated gender-based remark does not trigger an inference of discrimination, *Ottaviani v. State University*, 875 F.2d 365, 369 (2d Cir.1989). However, this comment, together with Rock–Tenn's decision not to consult the female supervisors and Rock–Tenn's more favorable treatment of engineers and managers with male supervisors does create an inference of sex discrimination.

Although Rock–Tenn's economic need to reduce its work force is a legitimate, non-discriminatory reason for Gadbois' discharge, trial courts must be cautious about granting summary judgment where intent to discriminate is at issue. *Gallo v. Prudential Residential Serv. Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir.1994); *Montana*, 869 F.2d at 103. Gadbois has provided sufficient evidence for a reasonable juror to conclude that gender was a motivating factor in Rock–Tenn's decision to terminate Gadbois. Rock–Tenn's Motion for Summary Judgment on Gadbois' claim of sex discrimination is denied.

### E. Breach of Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing protects the right of at-will employees to receive the benefits of the agreements they enter into. The Vermont Supreme Court has declined to recognize an implied covenant of good faith and fair dealing as a means to recovery where an at-will employee's contract has not been modified and the employee is challenging the dismissal based on a right to tenure. *Ross v. Times Mirror*, 164 Vt. 13, 23, 665 A.2d 580, 586 (1995).

▆ Under Vermont law, there exists a presumption in favor of at-will employment contracts. Employment contracts for an indefinite term are considered terminable at will. *Ross*, 164 Vt. at 18, 665 A.2d at 583. Evidence that the employer expressly or by clear implication foreclosed its right to terminate except for cause may overcome the at-will presumption. *Id.; Benoir v. Ethan Allen. Inc.*, 147 Vt. 268, 270, 514 A.2d 716, § *Bagni v. City of Bristol*, 127 Conn. 38, 14 A.2d 716, 717 (1986). Vague assurances are not equivalent to negotiated contract terms, nor do they alter an employee's status as an at-will employee. *Marcoux–Norton v. Kmart Corp.*, 907 F.Supp. 766, 775 (D.Vt. 1993).

▆ Gadbois has presented insufficient evidence to support her claim that her employment contract was altered. When Rock–Tenn purchased the Mill she was assured ongoing employment because of her skills. Ayyoub told her that if she was in a position Rock–Tenn needed, she would have a job. These general comments do not alter Gadbois' employment status. Given that the terms of Gadbois' employment were not altered and she remained a terminable at-will employee, summary judgment for Rock–Tenn is granted on this claim.

### F. Damages
#### 1. Legal and Equitable Relief Under FEPA

Vermont FEPA allows "a person aggrieved by a violation of the provisions of this subchapter [to] bring an action in Superior Court seeking [legal] damages or equitable relief ..." Title 12, § 449(b) (emphasis added). Rock–Tenn cites *Hodgdon v. Mt. Mansfield Co., Inc.*, 160 Vt. 150, 624 A.2d 1122 (1992), to support its contention that a plaintiff may seek either legal or equitable relief when suing under FEPA, but not both. In *Hodgdon*, the Vermont Supreme Court denied the plaintiff's request for a jury trial because she had solely requested equitable relief in her complaint. This does not mean, as Rock–Tenn avers, that a plaintiff may not seek both types of relief. Instead, the Court simply could not grant legal relief under FEPA where it had not been requested. *Id.*, 160 Vt. at 158, 624 A.2d at 1127.

▆ Accordingly, the Court concludes that a plaintiff may seek both legal and equi-

table relief when making a claim under FEPA.

### 2. *Failure to Mitigate*

■ In order to make a claim under Title VII and the ADEA, a plaintiff must make a "reasonably diligent" effort to secure alternative employment. 29 U.S.C. § 626(b); 42 U.S.C. § 2000e–5(g). It is undisputed that Gadbois applied to four other employers without success and voluntarily quit her alternative employment with Rock–Tenn. She currently works part time for her husband, employment which offsets costs she and her husband would otherwise incur. These circumstances create a jury question regarding the diligence of the Plaintiff's job search effort.

### 3. *Punitive Damages*

Rock–Tenn's contention that Gadbois has failed to produce sufficient evidence of malice to claim punitive damages under Title VII and the ADEA is premature, given that there is sufficient evidence regarding age and sex discrimination for this issue to go to the jury. The Court will reconsider the issue at the close of Gadbois' case.

### *Conclusion*

The Defendant's Motion to Dismiss (Paper 18) is hereby DENIED and the Plaintiff is given 30 days to amend her complaint.

The Defendant's Motion for Summary Judgment (Paper 18) on Counts I, II and III, the Title VII, ADEA and Vermont FEPA claims, is hereby DENIED.

The Defendant's Motion for Summary Judgment (Paper 18) on Count IV, the implied covenant of good faith and fair dealing, is hereby GRANTED.