**Michael ROMANO, Plaintiff,**

v.

**Margaret R. HARRINGTON, Individually and as Principal of Port Richmond High School, the Board of Education of the City School District of the City of New York, Nathan Quinones, Individually and as Chancellor of the City School District of the City of New York, Defendants.**

No. CV 85–2608 (RJD).

United States District Court,
E.D. New York.

July 7, 1987.

James R. Sandner, New York City, for plaintiff.

Peter L. Zimroth, New York City, for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

Plaintiff seeks declaratory, injunctive and monetary relief under 42 U.S.C. § 1983 and the United States Constitution for the violation of his First and Fourteenth Amendment rights. It is undisputed that plaintiff was dismissed from his position as faculty advisor to the Port Richmond High School Newspaper, *The Crow's Nest*, as a result of his role in the publication of a controversial student article opposing the proposed federal holiday for Martin Luther King. Plaintiff asserts that his discharge violated his and the newspaper staff's First Amendment rights and that he was not afforded the due process protections of the Fourteenth Amendment.

Defendants have moved for summary judgment on the grounds that (1) plaintiff lacks standing to assert a First Amendment cause of action either in his own right or on behalf of the students on the newspaper staff; that (2) plaintiff's position as faculty advisor did not rise to the level of a property interest protected by the due process clause; and that (3) plaintiff's hearing before the Board of Education satisfied any due process to which he was entitled. The Court finds that plaintiff has standing to pursue this action and that plaintiff's due process claim involves disputes as to material facts which preclude summary judgment. Defendants' motion is, in all respects, denied.

## FACTS

Plaintiff Michael Romano is a tenured English teacher at Port Richmond High School. He was faculty advisor to *The Crow's Nest* from September 1978 to February 1984, when the King article, entitled "Federal Holiday Mocks American Principles," was published on the op-ed page of the newspaper. The article, written by a student who was not on the newspaper staff, condemned, in strong terms, the proposed holiday for Martin Luther King. Plaintiff did not agree with the views expressed in the article, but he worked with the author on successive re-writes to make sure it complied with the paper's journalistic standards. The article was not censored by plaintiff or reviewed by the school administration prior to its publication.

On February 8, 1984, just after the distribution of the article, defendant Margaret Harrington, Principal of Port Richmond High School, met with plaintiff and terminated his position as faculty advisor. Defendant Harrington, in a letter to plaintiff dated February 15, 1984, memorialized the substance of their meeting. In essence, she felt that he had not taken appropriate steps to ensure balanced reporting, especially given the history of racial conflict at the school and the sensitivity of the King holiday issue; she claimed he had not been accessible to different groups of students within the student body; she found his professional judgment lacking; and she rated his performance, as faculty advisor to *The Crow's Nest*, as unsatisfactory for the fall term of 1983. Although plaintiff has remained at the school as a tenured English teacher, plaintiff's position as faculty advisor was terminated effective immediately.

The position of advisor to the paper is considered a "per session job" under the applicable collective bargaining agreement and is compensated at an hourly rate. Teachers are not given tenure for their advisory positions, but the collective bargaining agreement provides that "[t]eachers with at least two years of continuous satisfactory service in a particular activity shall have priority for retention in the same

activity for the following school year." Prior to February 1984, plaintiff's ratings, as a faculty advisor, had all been satisfactory.

Plaintiff appealed his unsatisfactory rating and resulting termination pursuant to the procedures set forth in the By-Laws of the Board of Education. Following a hearing at which plaintiff was not represented by counsel, the Chancellor, approximately one year after this case was brought, upheld the Principal's termination decision in a letter dated May 9, 1986.

STANDING

■ This Court may not adjudicate the merits of a legal controversy unless the plaintiff has standing to assert the claim. A litigant is entitled to a judicial determination if (1) the facts alleged present the Court with a "case or controversy" within the meaning of Article III of the Constitution and (2) if the litigant is the proper proponent of the asserted legal rights. *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *Linda R.S. v. Richard D.,* 410 U.S. 614, 617–18, 93 S.Ct. 1146, 1148–49, 35 L.Ed.2d 536 (1973). The first prong of the standing inquiry, which is mandated by the Constitution, is satisfied. The Court finds, and the defendants concede, that plaintiff's dismissal from his job as faculty advisor to the school newspaper is an actual injury which satisfies the Article III case or controversy requirement.

The second prong, which is judicially created, places prudential limitations on standing by requiring the plaintiff to demonstrate that the alleged government action resulted in an abridgment of his own rights. *Singleton v. Wulff,* 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). Here, plaintiff claims that he has standing to assert a violation of his own constitutional rights or, alternatively, that he has third party standing to assert a violation of the students' constitutional rights. Defendant argues that plaintiff had no constitutionally protected interest in the publication of the article and that plaintiff fails to satisfy the three-tiered third party standing test for *jus tertii* claims.

■ The facts of this case complicate the standing inquiry. Although Principal Harrington did not subject the article to pre-publication review or retaliate against the writer of the article or any member of the newspaper staff, the publication of the article resulted in plaintiff's dismissal from his position as faculty advisor. Harrington exercised control over the student publication in an attenuated fashion, but her actions, as described by plaintiff, could result in inhibiting free speech. If Harrington's conduct constituted unconstitutional reprisal for the exercise of First Amendment rights, such conduct may chill another advisor's willingness to give student writers the level of constitutional freedom to which they are entitled and may circumscribe the student editors' decisions regarding what to publish because of their concerns of indirect retaliation against their advisor or direct retaliation against a member of the student body. The Court finds that it would be anomalous to conclude that defendants can avoid plaintiff's allegations on the ground that the actual injury in this case was inflicted on the faculty advisor rather than on the students directly.

■ Under a long line of Supreme Court cases, it is undisputed that the discharge of a teacher for the exercise of his First Amendment rights is impermissible. *See, e.g., Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968); *Perry v. Sindermann,* 408 U.S. 593, 596–98, 92 S.Ct. 2694, 2696–98, 33 L.Ed.2d 570 (1972); *Shelton v. Tucker,* 364 U.S. 479, 485–86, 81 S.Ct. 247, 250–51, 5 L.Ed.2d 231 (1960); *Keyishian v. Board of Regents,* 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967). Although teachers do not relinquish their First Amendment rights at the 'schoolhouse gate,' their constitutional freedom may be curtailed by school policies that are reasonably designed to adjust those rights to the needs of the school environment. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35. The burden is on the school authorities to show that any restrictions placed on a teacher's or a student's First Amendment rights is based on the need to

avoid substantial disruption or material interference with school activities. *Trachtman v. Anker*, 563 F.2d 512, 517 (2d Cir. 1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1491, 55 L.Ed.2d 519 (1978) (school officials bear the burden of demonstrating a reasonable interference with student speech). Balancing of these competing interests, however, is not relevant to the issues before the Court at this juncture in the proceedings. Standing is merely a threshold determination which requires an examination of plaintiff's nexus with the asserted causes of action.

■ Defendants argue that regardless of whether plaintiff was dismissed due to the publication of the King article, plaintiff's own First Amendment rights were not violated. In order for the Court to find that plaintiff has first party standing, the Court must determine which recognized constitutional right protects plaintiff's failure to censure speech which was essentially not his own. Although the First Amendment guarantees teachers a certain level of academic freedom, *see, e.g., Keyishian v. Board of Regents*, 385 U.S. at 603, 87 S.Ct. at 683–84, in designing and presenting a course, nothing in this line of cases suggests that a faculty advisor's working relationship with a school newspaper is protected as an integral part of the teaching function. *See State Board for Community Colleges and Occupational Education v. Olson*, 687 P.2d 429, 437–39 (Colo.1984) (teacher has no right to require educational institution to allocate funds for a student newspaper when the activity is not part of the official curriculum, the newspaper is managed by the students and the teacher's relationship to the newspaper is advisory only).

■ Within certain parameters, teachers also retain their First Amendment rights of freedom of association in an academic environment. Freedom of association protects "the right of individuals to associate to further their personal beliefs." *Healy v. James*, 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972). As a general rule, government action may not interfere with or discourage a group's ex-

pression of their collective views if their joint speech is protected by the First Amendment. L. Tribe, *American Constitutional Law*, 702–03 (1978).

However, plaintiff was not seeking to further his personal beliefs through his relationship with the school newspaper and its staff. His advisory function is not akin to those who join together for the purpose of literary expression, political change or religious worship. *See Olson*, 687 P.2d at 439 (citing Tribe, 702–03). Although plaintiff worked with the students in editing and preparing the articles for publication, advising and supervising a student organization is not an activity which falls squarely within the ambit of the freedom of association cases.

The Tenth Circuit, in *Bertot v. School District No. 1*, 522 F.2d 1171, 1183 (10th Cir.1975), held that a teacher's "assistance and association" with an underground newspaper are within the protection of the First Amendment despite the fact that none of her own writing was involved. The Court, in examining the validity of a jury verdict, stated: "[i]t seems clear that activities connected with the newspaper publication could not be more eligible for protection of the constitutional guarantee." *Id.* Although the *Bertot* Court was not explicitly addressing whether the teacher had standing to assert her rights, after balancing the interests enunciated in *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35, the Court concluded that the teacher's actions were protected by the First Amendment and that there was no showing that her actions impeded the proper performance of her classroom duties or interfered with the regular operation of the school.

In *Pickings v. Bruce*, 430 F.2d 595 (8th Cir.1970), college administrators sanctioned a student organization, its officers and faculty advisors for writing a letter to a church questioning its policies on integration and for refusing to cancel a speaking invitation extended by the group. Two faculty advisors who had "approved" of the letter were asked to resign their positions by the principal of the school. The district court concluded that the sanctions imposed

**680**

by the principal did not infringe upon the constitutional rights of the faculty advisors. On appeal, no question was raised as to the standing of the plaintiffs to bring the action, but in holding that the school violated the plaintiffs' constitutional rights of free expression and association, the Court found that an organization and its faculty advisors have the right to express their views, individually or collectively, regarding matters of concern to a college or to a larger community. *Id.* at 598. The Court, in reaching its conclusion, relied on the Supreme Court cases clarifying that students and teachers retain their First Amendment rights as members of an academic community. *See, e.g., Tinker v. Des Moines Community School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969); *Pickering,* 391 U.S. at 563, 88 S.Ct. at 1731.

■ *Bertot* and *Pickings* and the other cases cited in plaintiff's brief do not directly address the standing issue. In addition, the facts of *Bertot* and *Pickings* intimate that the relationship of the teacher to the constitutionally protected actions of the students entailed a personal level of involvement not present in this case. The finding, in *Bertot* and *Pickings,* that a faculty advisor's constitutional rights are implicated even when the faculty member is merely acting as buffer between the students and the administration supports the logical inference that the dismissal of an advisor due to the student organization's activities has a chilling effect on both the advisor's and the student's rights. However, under traditional First Amendment analysis, plaintiff's rights of freedom of association were not abridged. As faculty advisor to *The Crow's Nest,* plaintiff was not permitted to use the newspaper as a medium for his own views, and plaintiff had no right to censor the students' work unless school officials could demonstrate "reasonable cause to believe that the prohibited expression would have engendered material and substantial interference with school activities or with the rights of others." *See Reineke v. Cobb County School District,* 484 F.Supp. 1252, 1257 (N.D.Ga. 1980); *Olson,* 687 P.2d at 439.

As the Supreme Court of Colorado states in *Olson,* any right of association incident to the publication of the newspaper belongs to the students and not to the faculty advisor. *Olson,* 687 P.2d at 439. In *Olson,* which addressed whether a faculty advisor had standing to raise First Amendment challenges to the termination of funding for the school newspaper, no action was taken against the faculty advisor, but this Court finds the analysis applicable: plaintiff's association with the newspaper staff is personal, and an abridgment of this association does not, without consideration of the student's rights, rise to the level of a constitutional violation. *See Nicholson v. Board of Education,* 682 F.2d 858, 864 n. 7 (9th Cir.1982) (right to refrain from actions that would infringe another's constitutional rights is derivative and depends on the validity of the other party's claim).

Some cases have held, in the standing context, that there is a constitutional right to be free from the burdens that flow from the unconstitutional regulation of others. *See generally,* 13 C. Wright, A. Miller & E. Cooper *Federal Practice and Procedure* § 3531.9 (2d ed. 1984); *Regents of the University of Minnesota v. National Collegiate Athletic Association,* 560 F.2d 352, 363–64 (8th Cir.1977). In the *NCAA* case, State University officials were found to have standing to assert that an NCAA ruling requiring them to declare three athletes ineligible without due process would force them to violate their constitutional duties to the athletes.

Although this case could be approached under the *NCAA* analysis, the Court finds that the third party standing doctrine is more appropriate because an exploration of plaintiff's duty to protect the First Amendment rights of the newspaper staff inevitably involves a determination of the rights of the students themselves. The case law on this issue is unsettled, but few standing decisions have relied on the notion that an individual is protected, under the First Amendment, in their capacity as guardian of the free speech rights of others. The amorphous approach of the *NCAA* case has not been widely followed. *See 13 Federal*

*Practice and Procedure* § 3531.9 at 554–55.

■ This Court rejects plaintiff's reliance on first party standing. Plaintiff's role as faculty advisor is not independently protected by the Constitution, and the Court declines to apply the analysis in the *NCAA* case. Instead, the Court finds that plaintiff satisfied the requirements, as enunciated in *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826, for third party standing. Under *Singleton,* the Court examines the relationship between plaintiff and the person whose right he seeks to assert and determines if (1) the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue and if (2) the litigant is as effective a proponent of the right as the third party. *Id.* at 114–15, 96 S.Ct. at 2874–75. The Court must also assess the ability of the third party to assert his own right and if there is "some genuine obstacle to such assertion." *Id.* at 115–16, 96 S.Ct. at 2874–75.

The *Singleton* analysis must be examined in light of the fact that the Supreme Court has relaxed the traditional rules of standing in First Amendment cases "without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an intolerable, inhibitory effect on freedom of speech." *Eisenstadt v. Baird,* 405 U.S. 438, 445 n. 5, 92 S.Ct. 1029, 1034 n. 5, 31 L.Ed.2d 349 (1972).

■ Based on the relaxation of the First Amendment standing requirements and the peculiar facts of this case, the Court concludes that the *Singleton* test is satisfied. The students' enjoyment of their First Amendment rights is inextricably bound up with plaintiff's role as faculty advisor to the school newspaper, and the relationship of a faculty advisor and the newspaper staff, though perhaps adverse in other contexts, is, based on the undisputed facts presented here, sufficiently close to satisfy the *Singleton* test.

■ Finally, the fact that the students involved have graduated presents a potential problem of mootness, which often arises in third party standing cases and partially explains the absence of student plaintiffs. In addition, the fact that the Principal took no action against any of the students but chose to remove the faculty advisory instead, dictates against the possibility that student plaintiffs would assert their constitutional rights directly.

## DUE PROCESS

In order to allege a claim under the due process clause of the Fourteenth Amendment, plaintiff must show that he has a property interest in his position as faculty advisor to the school newspaper and that he was deprived of his position without due process of the law.

State law, and not the Constitution, may create a property interest protected by the strictures of the due process clause. Thus, pursuant to the Supreme Court's decisions in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), this Court must determine whether plaintiff has a legitimate claim of entitlement to his per session job. *See also Goetz v. Windsor,* 698 F.2d 606 (2d Cir.1983).

■ It is well established that a property interest in employment may be created by explicit contractual provisions or by implicit understandings. *Goetz,* 698 F.2d at 608. Although at will employees possess no property interest in continued employment, in *Roth,* 408 U.S. at 578, 92 S.Ct. at 2709–10, the Supreme Court noted that a person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent "sufficient cause" for discharge. *Goetz,* 698 F.2d at 609.

As stated previously, advisor positions at Port Richmond High School are filled annually, and the collective bargaining agreement provides priority for reappointment to the position after two years of satisfactory service. Thus, in view of the fact that plaintiff served satisfactorily as newspaper

advisor for six years, he has retention rights pursuant to the express terms of the contract.

 Whether the retention rights provided for in the collective bargaining agreement and any implicit understandings surrounding this provision give plaintiff a constitutionally protected property interest in his job as faculty advisor is not readily ascertainable on the basis of the existing record. The wording of the provision in the agreement certainly implies that a faculty advisor who has performed satisfactorily for two years may continue to serve in their per session job absent an unsatisfactory rating from the school. On its face, the provision appears to guarantee continued employment absent sufficient cause for discharge, and thus may, under *Roth*, create a protected liberty interest.

Article Fifteen of the agreement allows per session teachers to appeal their unsatisfactory ratings to the Chancellor as prescribed in Section 5.3.4 of the By-Laws of the Board of Education. The appeal procedure outlined in the By-Laws describes per session employees as probationary and provides for a post-deprivation hearing without counsel. Despite the Board of Education's use of the term probationary, the mere use of the label cannot undermine plaintiff's due process rights if a constitutional entitlement has been created in the agreement, either through the school's established practices or by implicit understanding with the per session teachers.

If plaintiff's per session job is probationary, plaintiff's post-deprivation hearing was adequate. *Goetz*, 698 F.2d at 609. However, if plaintiff's job as faculty advisor constitutes a property interest protected by the due process clause, plaintiff may have been entitled to a pre-termination proceeding, including the right to retain counsel, prior to his discharge. *Roth*, 408 U.S. at 570–71 n. 8, 92 S.Ct. at 2705–06 n. 8 (some form of hearing is required before the owner is finally deprived of a protected property interest); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1082) (timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved).

The factual question of whether a property interest was created and, if so, whether plaintiff received the due process protection to which he is entitled is not suitable for determination on a motion for summary judgment.

CONCLUSION

The court denies defendants' motion for summary judgment. Plaintiff has third party standing to assert the constitutional claims, and the due process cause of action involves factual issues which will be resolved by the Court prior to, or during, trial.

SO ORDERED.