**Martin CAMACHO, Plaintiff,**

v.

**Symra D. BRANDON, individually, Gordon Burrows, individually, John Spencer, individually, and the City of Yonkers, New York, Defendants.**

**No. 98 CIV. 4750(WCC).**

United States District Court, S.D. New York.

Oct. 15, 1999.

---

Riccardulli, Colin Walsh, Assoc. Corporation Counsel, Of Counsel.

Lovett & Gould, Attorneys for Plaintiff, White Plains, NY, Jonathan Lovett, Of Counsel.

Goodstein & West, Attorneys for Defendants Symra D. Brandon and Gordon Burrows, New Rochelle, NY, Robert David Goodstein, Of Counsel.

William M. Mooney, Corporation Counsel of the City of Yonkers, Attorneys for Defendants John Spencer and City of Yonkers, Yonkers, NY, Ching Wah Chin, Sr. Assoc. Corporation Counsel, Kevin Crozier, Jessica Huhn–Kenzik, Stephen

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In an Opinion and Order dated July 16, 1999, we denied in part and granted in part defendants' joint motion for summary judgment dismissing the action pursuant to Federal Rule of Civil Procedure 56. We assume familiarity with that opinion.

## BACKGROUND

By way of brief summary, Martin Camacho ("plaintiff") was a full-time Senior Aide to the City Council for the City of Yonkers. Plaintiff performed work for all of the city council members, but, because plaintiff spoke Spanish, he worked mainly for Councilman Fernando Fuentes, an Hispanic councilman who represented a predominantly Hispanic district. Plaintiff alleges that the individual defendants (Councilwoman Symra D. Brandon, Councilman Gordon Burrows and Mayor John Spencer) were involved in a political dispute with Fuentes. Plaintiff further alleges that defendants repeatedly threatened him that if Fuentes continued to speak and vote in opposition to their political objectives, they would fire plaintiff. Because Fuentes is a duly elected councilman and cannot be fired, plaintiff claims that defendants sought to influence Fuentes by threatening to fire plaintiff, a strategem designed to take advantage of the fact that Fuentes relied on plaintiff's work and was personally friendly with him. Plaintiff claims that to punish Fuentes for voting against them, the defendants eventually acted on their threat, firing plaintiff a mere twelve hours after a disputed vote in which Fuentes clashed with the individual defendants.

In our July 16, 1999 Opinion and Order, defendants' motion was denied to the extent it sought dismissal of plaintiff's claims under 42 U.S.C. § 1983 for retaliation for

the exercise of protected First Amendment rights. The issue of third-party standing was central to this result, as plaintiff was allowed to assert a First Amendment claim on behalf of Fuentes. However, defendants' motion was granted to the extent that it sought to dismiss plaintiff's claims for a violation of his equal protection rights, a violation of his rights under 42 U.S.C. § 1981, and a supplemental state law claim based on Article 78 of the New York State Civil Practice Law and Rules. The City Of Yonkers ("the City") and Spencer, represented by the same counsel, and Brandon and Burrows, represented together, here make separate motions for this Court to reconsider that portion of the July 16, 1999 Opinion and Order which denies their summary judgment motion to dismiss plaintiff's First Amendment retaliation claim. For the reasons stated below, defendants' motion is granted only to the extent that we have reconsidered the prior decision, but in all other respects is denied, and that decision is reaffirmed.[1]

## DISCUSSION

### I. *Defendants' Failure to Adhere to the Local Rules of This Court*

We again note that, in violation of the Court's local rules, the defendants failed to file any Rule 56.1 Statement in support of their original motion. Local Civil Rule 56.1 states in relevant part:

(a) Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a

statement may constitute grounds for denial of the motion.

Local Rule 56.1(a).

■ "It is well established that if a party fails to object or respond to the factual assertions in an opposing party's 3(g) [now 56.1] Statement, those factual assertions will be deemed true." *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.,* 135 F.3d 831, 835 (2d Cir.1998); *see also Fernandez v. DeLeno,* — F.Supp.2d —, — (S.D.N.Y.1999). For this reason alone, the motion for reconsideration should be denied.

■ Defendants attempted to cure their error by submitting a Rule 56.1 Statement in conjunction with their motion for reconsideration. Any attempt to submit a Rule 56.1 Statement at this juncture, after the Court issued a lengthy opinion on their original motion, comes too late. Local Rule 56.1 would be utterly useless if, after failing to comply with the local rules, and failing to prevail on their motion, the erring parties could cure their mistake by submitting the Statement as part of a motion for reconsideration.

, Defendants also have failed to comply with the spirit of Local Civil Rule 6.3, which requires a party seeking to move for reconsideration to serve its motion within ten days after the docketing of the court's determination of the original motion. Although the Court's Opinion and Order was dated July 16, 1999, and each of the defendants received the opinion on that date, because it was not filed until July 19, we will treat the ten-day period technically as having begun on July 19. Thus, defendants were required to serve their motion for reconsideration by Monday, August 2.[2] However, defendants apparently took no action until they delivered a letter to this Court on Thursday, July 29 requesting permission for a pre-motion conference in order to move for reconsideration. This left only two working days for the Court to

---

1. While the City and Spencer and Burrows and Brandon have made separate motions for reconsideration, we will refer to their motions collectively in the singular.

2. We have omitted weekends in calculating this ten-day period.

schedule the conference, and for defendants to prepare and serve their motion. Service of the motion for reconsideration eventually occurred well after the ten-day period had lapsed. It appears clear that, even if the Court had dispensed with its requirement for a pre-motion conference, service would still have been untimely.

## II. *Issues Raised by Spencer and the City*

■ Moreover, even overlooking these procedural errors, defendants' motion fails on the merits. The central basis of the motion for reconsideration filed by Spencer and the City is that because plaintiff is a "policy maker," we are compelled to dismiss his First Amendment retaliation claim. Their argument, however, simply misunderstands the relevant Supreme Court precedent on this issue. Even if plaintiff were a policy-maker (and we explained in footnote three of our July 16 Opinion and Order why we believe he was not), this fact would not provide a basis for dismissing plaintiff's First Amendment claim.

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court ruled that public employers may fire a policy-making employee based upon his or her political affiliation. *Elrod* makes summary judgment appropriate for any plaintiff who: (1) possesses policy-making authority; and (2) claims that he or she was fired because of party affiliation. *Id.* The rationale behind this rule is that in the case of public employees vested with policy-making authority, "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 523, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

Central to the disposition of the *Elrod–Branti* line of cases, however, is that in each of them the plaintiff claimed that he was discriminated against because of his own political affiliation. *Elrod* and its

progeny allow for summary dismissal of such actions because there are no issues of material fact: the plaintiffs freely admitted that they were policy-makers and alleged that they were fired because of their political affiliation, association, or belief. *See McEvoy v. Spencer,* 124 F.3d 92, 104 (2d Cir.1997) ("... [plaintiff] himself has alleged that (1) he was a policymaker ... and (2) he was demoted ... for his political affiliation or association").

Crucial to the instant action, however, is that plaintiff has presented substantial evidence that his firing had nothing to do with his political affiliation. Specifically, plaintiff has alleged that defendants, knowing that Fuentes relied on plaintiff's Spanish-speaking abilities and would be impacted negatively if plaintiff was terminated, first threatened to fire plaintiff in an attempt to influence Fuentes' voting record, and then fired him to punish Fuentes for voting against them despite their threats. In support of this assertion, plaintiff has submitted an affidavit stating that the individual defendants advised him that Fuentes' political beliefs had put plaintiff in a "very difficult position" with respect to his continued employment and then, twelve hours after a disputed vote in which Fuentes clashed with the defendants, Brandon handed plaintiff his notice of termination, telling him he could "thank" Fuentes for his termination because of the way Fuentes had voted the night before. *See* Plaintiff's Rule 56.1 Statement at ¶¶ 14–21, Plaintiff's Affidavit at ¶¶ 2–6. In response to this evidence, defendants have furnished the Court with no indication as to how plaintiff's political affiliation was relevant to their decision to fire him, except for making the vague assertion that plaintiff could no longer be "trust[ed]." *See* Spencer and the City's Memorandum of Law at 8. At the least, there is a disputed issue of material fact as to the reason for plaintiff's discharge, which must be resolved by the jury.[3]

---

**3.** The Court is fully aware that under the relevant case law, policy-makers need not engage in actual speech, and the mere potential for harm may result in the loss of claimed

First Amendment protections. *See Camacho v. Brandon,* 56 F.Supp.2d 370, 376 (S.D.N.Y. 1999) (in which we discuss the possibility that

Whether plaintiff was or was not a policy-maker is irrelevant for purposes of this motion. In the typical *Elrod*-style case, the plaintiff claims that he or she was discriminated against because of his or her own political affiliation. On the basis of these cases, defendants argue that because plaintiff was a policy-maker, his claim must be dismissed. In this case, however, plaintiff has provided substantial evidence that he was not fired because of his own political affiliation, but to punish Fuentes for Fuentes' political position and protected speech. Thus, even if plaintiff had been a policy-maker, summary judgment is inappropriate because there exists a disputed issue as to whether plaintiff was fired because of his own political affiliation or belief. If, for example, in order to punish Fuentes for his speech, plaintiff was fired to impede Fuentes' efficient performance of his duties, it would be irrelevant whether or not plaintiff was a policy-maker.

This is the reasoning employed in *Adler v. Pataki*, 185 F.3d 35 (2d Cir.1999), a case relied on heavily by defendants. In *Adler*, the plaintiff claimed that he was fired in retaliation for a lawsuit filed by his wife. *Id.* at 40–41. Even though the Second Circuit concluded that plaintiff was a policy-maker, the Court denied, in part, defen-

dants' motion for summary judgment. *Id.* at 47. The Court decided that Adler had sufficiently raised the issue whether his firing was due to his wife's protected activities, and thus a jury would have to decide whether he was fired because of his own political affiliation or because of his wife's lawsuit. *Id.* As the *Adler* Court held: "The factual complications likely to arise [due to *Elrod* and its progeny] are not a concern.... Adler contends that he was discharged because of his wife's lawsuit. He alleges that the discharge impaired his First Amendment right of intimate association.... If he can persuade the trier of such motivation, [*Elrod* and its progeny] would not bar his claim, even though he held a policy-making position." *Id.* Similarly, because plaintiff in the instant action sufficiently alleges that his firing had nothing to do with his own political affiliation, summary judgment is inappropriate "even though he held a policy-making position." *Id.*[4]

III. *Issues Raised by Burrows and Brandon*

■ Burrows and Brandon base their motion for reconsideration on *Adler*, 185 F.3d 35, decided by the Second Circuit shortly after our July 16 Opinion and Or-

---

plaintiff's speech "interfered or potentially interfered with the fulfillment of his job responsibilities"). The fact remains, however, that plaintiff has provided sufficient evidence to demonstrate, for purposes of this motion, that his firing had nothing to do with his own speech or political affiliation, whether actual or potential. Thus, cases holding that an employer need only prove the potential for harm, *see Connick v. Myers*, 461 U.S. 138, 152, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), have no bearing on this motion.

4. Of course, if we were to apply the rule established in *Pickering v. Bd. of Ed.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), defendants' position is even more tenuous. *Elrod* provides a categorical rule to be applied when plaintiffs allege they were discriminated against because of political affiliation: if the plaintiff is a policy-maker and alleges discrimination based on affiliation, no constitutional tort can be asserted. In contrast, *Pickering* is applied when the plaintiff is a policy-maker

and he alleges that he was retaliated against for engaging in protected speech (rather than basing his claim on association or party affiliation). In such a case, *Elrod's* categorical rule is inapplicable. Instead, a balancing test is employed, weighing the employee's right to speak against the employer's interest in the effective operation of government. Specifically, the court must assess the extent of the disruption caused by the employee's speech, and whether the disruption justifies the employer's attempt to stifle the employee's expressive activity. *See Pickering*, 391 U.S. at 569–73, 88 S.Ct. 1731.

Plaintiff claims that he engaged in no speech whatsoever, but was fired because of Fuentes' speech. If plaintiff was fired as a punitive response to Fuentes' speech, then the *Pickering* test tips decisively in favor of plaintiff, because his termination would have nothing to do with the threat that plaintiff might disrupt "the effective operation of the workplace." *McEvoy*, 124 F.3d at 98.

der was issued. But *Adler* is not contrary to that ruling.

In *Adler*, the plaintiff claimed that he was fired because of a lawsuit brought by his wife. *Id.* at 40–41. Thus, plaintiff brought his own lawsuit against the state, claiming that his public employer had violated his right to intimate association. *Id.* The Court ruled that plaintiff could bring suit for the deprivation of his right of intimate association. *Id.* at 42–47. Surprisingly, defendants have interpreted that ruling as meaning that "... in *Adler*, the Second Circuit has enunciated the two prerequisites of relationship which define when a third party can assert another's constitutional rights; either the two individuals must share an intimate relationship or they must have engaged in joint First Amendment rights." *See* Brandon and Burrows' Memorandum of Law at 5. There is no foundation for that conclusion.

The Supreme Court has instructed that district courts may grant third-party standing if: (1) the relationship between the plaintiff and the third party is such that the plaintiff is fully, or very nearly, as effective a proponent of the third party's right as the third party itself; and (2) there is some obstacle to the third party asserting the right. *Singleton v. Wulff*, 428 U.S. 106, 114–16, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). There is no basis to conclude that the requirement that the rights of the plaintiff and the third party be "inextricably bound up," *id.* at 114, 96 S.Ct. 2868, means that there must be an "intimate relationship" between these par-

ties. The requirement of a "relationship" between the plaintiff and the third-party exists to ensure that the third-party's constitutional rights will be effectively advocated by the plaintiff. *Compare Hong Kong Supermarket v. Kizer*, 830 F.2d 1078 (9th Cir.1987) (a grocery store sought third-party standing on behalf of its customers, and attempted to enjoin all future operation of a federal aid program, but since the interests of customers of the store would be best served if the program continued to operate, the interests of plaintiff and the customers are not "inextricably bound up"). This is far from saying that the plaintiff and the third party must be "intimately" related. The beer vendor in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), for example, was not intimately related to the teenage men prohibited by statute from drinking her beer, nor did the statute violate her own constitutional rights to equal protection. This, of course, did not defeat plaintiff's right to third-party standing, since plaintiff still met the clear requirements of *Singleton.* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826. Defendants' narrow reading of *Adler* ignores such well established Supreme Court precedent.[5]

Defendants place heavy emphasis on a single sentence in *Adler*, which reads:

> It was objectively reasonable to believe that Adler was a policy-maker, and the right of a government policy-maker to be free from adverse employment action in retaliation for some extraneous occur-

---

**5.** Similarly, we also reject the argument made by Spencer and the City that third-party standing is inappropriate because the third party, Fuentes, was not sufficiently injured. The purpose of third-party standing is to allow the vindication of rights by a plaintiff when the injured third-party is unlikely to bring suit himself. *See Singleton*, 428 U.S. at 116–17, 96 S.Ct. 2868. Fuentes was, of course, "injured." If plaintiff's allegations are true, defendants not only fired an employee who performed needed work for Fuentes, but they did so after warning Fuentes that they would exact such "revenge" if Fuentes freely exercised his First Amendment rights. But it was plaintiff and not Fuentes who was

fired, and this absence of any direct economic loss to Fuentes makes it unlikely that he would bring suit himself. This is a classic situation for third-party standing. *See Romano v. Harrington*, 664 F.Supp. 675, 680–81 (E.D.N.Y.1987) (the court ruled that plaintiff did not suffer a deprivation of his own First Amendment rights, but was still entitled to assert the rights of his student—no discussion of injury suffered by third party); *Kounitz v. Slaatten*, 901 F.Supp. 650, 654–55 (S.D.N.Y. 1995) (plaintiff who claims she was fired because her husband engaged in protected activity has standing to sue—no discussion of injury suffered by husband as necessary to assertion of this claim).

rence, such as his wife's activities, was not clearly established at the time of Adler's discharge (which, in any event, occurred before our decision in *McEvoy* ).

*Adler,* 185 F.3d at 48. Defendants rely on this sentence to argue that we must dismiss this action on qualified immunity grounds.

However, the Court of Appeals can address only those arguments raised by the parties appearing before them. *Adler* involves a claim "that state action unlawfully burdened a marital relationship." *Id.* at 43. It is clear from the Second Circuit's opinion that Adler never made a traditional third-party standing claim. Instead, the plaintiff there argued that firing him because of his wife's lawsuit impaired his own constitutional right of intimate association. *Id.* at 41–42 ("Adler contends that he was fired because of his wife's lawsuit, an action that he contends violates his First Amendment right of intimate association"). That claim, as the *Adler* Court pointed out, is a unique cause of action that was not clearly established prior to the Court's decision. In fact, the contours of a claim in which the plaintiff alleges that an employment decision violated his or her own rights to intimate association are still evolving. *See, e.g., Singleton v. Cecil,* 133 F.3d 631, 635 (8th Cir.1998) (rejecting claim that discharge of at-will police employee whose wife plotted to have police chief arrested violated his First Amendment right of intimate association), *aff'd on this point,* 176 F.3d 419, 423–24 (8th Cir. 1999) (in banc); *Shahar v. Bowers,* 114 F.3d 1097, 1110 (11th Cir.1997) (in banc) (rejecting claim that withdrawal of job offer for position of state prosecutor because of her same-sex "wedding" violated her First Amendment right of intimate association).

In contrast, the requirements of a third-party standing claim have been clearly defined for decades. *See, e.g., Singleton,* 428 U.S. 106, 96 S.Ct. 2868. Moreover, in 1987, third-party standing was specifically applied to a § 1983 First Amendment claim much like the instant action, *Romano,* 664 F.Supp. 675, and other cases in this jurisdiction have permitted the plaintiff to state a First Amendment retaliation claim based solely upon the speech of another. *See Kounitz,* 901 F.Supp. 650 (plaintiff has standing to sue, claiming she was fired because her husband exercised his own First Amendment rights); *Dangler v. Yorktown Central Schools,* 771 F.Supp. 625 (S.D.N.Y.1991) (student who claims he was denied admittance into honor society because of his father's criticism of the school has standing to assert his father's First Amendment rights). Finally, while the *Adler* Court notes that the defendants did not have the benefit of *McEvoy* to help inform their decision-making process, *McEvoy* was decided long before the disputed actions took place in the case before us. *Adler,* 185 F.3d at 48.

To summarize, defendants have argued that even if plaintiff's allegations are true, it was objectively reasonable for them to punitively fire plaintiff in retaliation for Fuentes' speech. We hold that no informed person in 1998 could reasonably believe that such conduct is constitutionally permissible.[6]

## CONCLUSION

For the reasons explained above, as well as for the reasons enunciated in our July 16, 1999 Opinion and Order, defendants' motion for reconsideration is denied.

SO ORDERED.

---

6. Of course, even if *Adler* required that the defendants in this action be given qualified immunity, this is true only for plaintiff's dam-age claim, and his request for reinstatement would still be viable. *Adler,* 185 F.3d at 48.