Maria BALLAS, et al.

v.

CITY OF READING, et al.

No. CIV. A. 00–CV–2943.

United States District Court, E.D. Pennsylvania.

June 12, 2001.

Lloyd George Parry, Davis, Riter, Parry & Hartmann, Philadelphia, Stephen V. Yarnell, Richard M. Squire and Associates, Wyncote, PA, for Maria Ballas, S. Henry Lessig, Plaintiffs.

Steven K. Ludwig, Fox, Rothschild, O'Brien & Frankel, Maren Reichert, Fox Rothschild O'Brien & Frankel, LLP, Philadelphia, PA, for City of Reading, Pennsylvania, Joseph Eppihimer, Mayor, City Council of Reading, Pennsylvania, Paul Hoh, President of Council, Vincent Gagliardo, Jr., Casey Ganster, Vaughn Spencer, Jeffrey Waltman, Members of Council, Jesus Pena, Human Resources Director, City of Reading, Barbara Adams, Administrator of the Pension Board of the City of Reading, City of Reading Officers and Employees Pension Board, City Council of Reading, Defendants.

### MEMORANDUM

PADOVA, District Judge.

Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants Defendants' Motion with respect to the state law claims alleged in Counts V through X and Count II against Jesus Pena, and denies said Motion with respect to Count II alleging retaliatory termination under § 1983 against Mayor Eppihimer and the City of Reading.

### I. BACKGROUND

This case revolves around Defendants' alleged retaliatory termination of Plaintiff Maria Ballas ("Ballas"). Ballas worked as purchasing manager for the City of Reading, Pennsylvania ("City") from 1987 until her discharge on April 28, 2000. Ballas and her husband Henry Lessig ("Lessig"), a member of the City Planning Commission and the Solid Waste Collection Task Force, both supported comprehensive trash collection in the City. Defendant Joseph Eppihimer ("Eppihimer" or "Mayor"), the City Mayor, opposed comprehensive trash collection and began a campaign of retaliation against supporters of comprehensive trash collection. Eppihimer and Jesus Pena ("Pena"), City Director of Human Resources, terminated Ballas on April 28, 2000. Ballas claims that she was discharged in retaliation for her and Lessig's support for comprehensive trash collection, and through procedures that contravene those outlined in the City Charter.

### II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden

can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Evidence introduced to defeat or support a motion for summary judgment, however, must be capable of being admissible at trial. *Callahan v. AEV, Inc.,* 182 F.3d 237, 252 n. 11 (3d Cir.1999) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1234 n. 9 (3d Cir.1993)). The Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

## III. DISCUSSION

After resolution of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and a motion for judgment on the pleadings, the claims in the Amended Complaint have been substantially narrowed. Count II, alleging retaliatory termination of Ballas in violation of the First Amendment, remains against the City, Mayor Eppihimer, and Pena. Counts V through IX, alleging violations of the City Charter, and Count X, alleging loss of consortium by Lessig, remain against Pena. Count XI does not state a claim under substantive law, but merely requests injunctive relief based on the other counts in the Amended Complaint. Defendant seeks summary judgment with re-

spect to all of the remaining counts. The Court will address each argument in turn.

### A. Count II

Count II alleges that Defendants City, Eppihimer and Pena violated Ballas' rights under the First Amendment by firing her in retaliation for her husband's speech in support of comprehensive trash collection in the City of Reading. Defendants seek summary judgment on the merits of Count II and additionally raise various immunity arguments.

#### 1. Merits

Courts apply a three-step, burden-shifting analysis for retaliation claims made pursuant to the First Amendment under 42 U.S.C. § 1983. *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir. 1995). First, the plaintiff must show that she engaged in conduct or speech that is protected by the First Amendment. *Id.* Whether the plaintiff's speech was protected is a question of law appropriate for the court to decide on summary judgment. *Azzaro v. County of Allegheny,* 110 F.3d 968, 975 (3d Cir.1997). Second, the plaintiff must show that the defendant responded with retaliation, and that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Anderson v. Davila,* 125 F.3d 148, 161 (3d Cir.1997); *Watters,* 55 F.3d at 892. Third, the defendant may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken even in the absence of the protected conduct. *Watters,* 55 F.3d at 892. Where a reasonable inference can be drawn that an employee's speech was at least one factor considered by an employer in deciding whether to take adverse action against the employee, the court should leave the question of whether the speech was a motivating fac-

tor in that determination to the finder of fact. *Merkle v. Upper Dublin School District*, 211 F.3d 782, 793 (3d Cir.2000).

## A. Protected Speech

■ Defendants first argue that the record lacks evidence demonstrating that Ballas engaged in protected conduct or speech. The Amended Complaint reveals three potential bases for Ballas' claim under Count II:(1) speech about comprehensive trash collection by Ballas; (2) speech about comprehensive trash collection by her husband, Lessig; and (3) a prior lawsuit Ballas filed against the City over an allegedly improper reprimand by former City councilwoman Dawn Schutt. Ballas' papers in response to Defendants' Motion rely solely on Lessig's speech about comprehensive trash collection as the basis for her claim of retaliatory termination. Accordingly, the Court presumes that Count II is based only on Lessig's speech.

For the purposes of this Motion, Defendants assume that speech about comprehensive trash collection in the context of recent City politics is protectable under the First Amendment and that Lessig engaged in such speech. Rather, Defendants contend that Ballas lacks standing to assert Lessig's speech on the topic as a basis for her suit. The Court disagrees.

As a general rule, litigants may not assert the rights of others to obtain relief from injury for themselves. *See Singleton v. Wulff*, 428 U.S. 106, 113–14, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Amato v. Wilentz*, 952 F.2d 742, 748–49 (3d Cir. 1991). There is an exception to this gener-

al rule, however, when (1) the third party's enjoyment of the right in question is "inextricably bound up with the activity the litigant wishes to pursue," and (2) the third party is unable to assert his or her own right. *Singleton*, 428 U.S. at 113–14, 96 S.Ct. 2868.

In such cases, the court must consider three factors. First, the court must examine the relationship between the plaintiff and the third party whose rights are asserted. *Alexander v. Whitman*, 114 F.3d 1392, 1408–9 (3d Cir.1997). Second, the court must consider the ability of the third party to advance its own rights, that is whether some obstacle impedes the rightholder's own suit. *Id.* Third, the court must inquire into the impact on the third party's interests, i.e. whether the plaintiff and the third party have consistent interests. *Id.* In cases asserting discrimination for protected speech, the court should also consider the potential effect of chilling expression. *Amato*, 952 F.2d at 750. The plaintiff has the burden of establishing third party standing. *Id.*

The Court concludes that Ballas may assert Lessig's speech as a basis for her suit.[1] As husband and wife, Lessig and Ballas are closely connected. *See Kounitz v. Slaatten*, 901 F.Supp. 650, 655 (S.D.N.Y. 1995). Lessig is unable to advance his own rights here since the Court has already determined that Lessig could not assert a First Amendment claim because he lacked constitutional injury.[2] *See Ballas v. City of Reading*, No.Civ.A.00–2943, 2001 WL 73737, at *7 (E.D.Pa. Jan.25, 2001). Lessig's enjoyment of the right to

---

1. Since Ballas may maintain her suit based on Lessig's speech, the Court denies Plaintiff's request to amend her pleadings to state a claim under First Amendment right to freedom of association.

2. Originally Count II was brought by both Lessig and Ballas. The Court, however, dis-

missed Lessig's claim on the ground that he failed to show retaliation. The Court held that Lessig could not base his claim on the alleged retaliatory firing of his wife, but rather must allege some actionable harm that he personally suffered.

speak out on his political beliefs is entwined with Ballas' interest in continued employment with the City of Reading because they are financially dependent upon each other. A determination that Ballas lacks standing to sue would have the effect of chilling free expression of spouses or relatives of state or municipal workers. All of these considerations support a conclusion that Ballas may assert Lessig's speech as a basis for her retaliatory termination claim.

### B. Substantial Motivating Factor

■ Defendants next argue that the record lacks evidence that Lessig's speech was a substantial motivating factor in her termination. Defendants first argue that the length of time between Lessig's speech in 1997 and Ballas' termination in 2000 belies any reasonable inference of causation. Contrary to Defendants' contention, the time lag is not dispositive since the parties agree that Eppihimer did not become Mayor until January 2000. Prior to then, he was only a city councilman. There is no evidence that as a city councilman Eppihimer had influence over employment decisions.

Defendants further claim that the only evidence of causation is the unsupported beliefs of Plaintiff's family and friends, and rumors that spread around City government. The Court, however, determines that Plaintiff submits sufficient evidence by which a reasonable juror could find that Lessig's speech was a motivating factor in Ballas' termination. (*See, e.g.,* Pl.Ex. A at 97–98, 101, 181; Pl.Ex. C ¶ 61; Pl.Ex. D at 54–46, 175–76; Pl.Ex. E ¶ 35.) Accordingly, the question of whether the speech was ultimately a motivating factor of her termination must be left to the factfinder for resolution. *See Merkle,* 211 F.3d 782, 793 (3d Cir.2000).

### C. Termination Inevitable in the Absence of Protected Speech

■ Defendants further contend that they can prove that Ballas would have been terminated regardless of Lessig's speech. While admitting that Mayor Eppihimer knew about and opposed Lessig's position on trash collection, Defendants submit evidence that Ballas was terminated as part of a reorganization of city government required by budget shortfalls and in part because of her hostile attitude towards the Mayor. (*See* Defs. Ex. A at 190–91, 342; Defs. Ex. E; Defs. Ex. I; Defs. Ex. L.) Ballas disputes this contention through evidence that Defendants failed to consider her performance record, that her termination did not reap any savings for the City, and that her replacement had lesser qualifications and was offered a higher salary. (*See, e.g.,* Pl.Ex. A at 180; Pl.Ex. G at 71; Pl.Ex. H ¶ 11; Def. Ex. I.) Ballas further denies exhibiting any outward hostility to Eppihimer. (Pl.Ex. C ¶¶ 66–67; Pl.Ex. E ¶ 28; Pl.Ex. F ¶ 4.) Plaintiff adduces sufficient evidence to create a genuine issue of material fact as to whether Defendants would have terminated Ballas even in the absence of protected speech. Therefore, this issue must be left to the factfinder at trial. *See Merkle,* 211 F.3d at 795.

For these reasons, Defendants are not entitled to summary judgment on this ground.

#### 2. *Ballas' Policymaker Status*

■ Defendants next argue that Ballas was a policymaker within the City government who is not protected from termination under § 1983 pursuant to *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Court rejects this argument.

In *Elrod,* the Supreme Court held that public employees may not be discharged based on political party affiliation. *Id.* at

373, 96 S.Ct. 2673. An exception exists where the nature of the employee's position is such that her private political beliefs would interfere in the discharge of her public duties. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Carver v. Foerster,* 102 F.3d 96, 105 (3d Cir.1996) (Becker, J. concurring). An employee who "acts as an advisor or formulates plans for the implementation of broad goals" is in that position. *Elrod,* 427 U.S. at 367–68, 96 S.Ct. 2673. However, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. 1287. The defendant bears the burden of establishing that the discharged employee falls within this exception. *Elrod,* 427 U.S. at 368, 96 S.Ct. 2673; *Ness v. Marshall,* 660 F.2d 517, 521 (3d Cir.1981).

At the threshold, *Elrod* and *Branti* likely do not apply to Ballas because she is not claiming that Defendants discriminated against her on the basis of her party affiliation. *See Camacho v. Brandon,* 69 F.Supp.2d 546, 550 (S.D.N.Y. Oct.15, 1999). Both *Branti* and *Elrod* speak primarily in terms of the employee's political party affiliation and address patronage dismissals. *See, e.g., Branti,* 445 U.S. at 519, 100 S.Ct. 1287; *Elrod,* 427 U.S. at 373, 96 S.Ct. 2673. Ballas does not contend that she was fired because of her party affiliation, but rather because of her husband's speech on a narrow political issue.

Furthermore, Defendants have failed to submit sufficient evidence to establish that a certain party affiliation or a particular political belief is an appropriate requirement for employment as a municipal purchasing manager. *See Elrod,* 427 U.S. at 368, 96 S.Ct. 2673 (placing burden of proof on defendant). The purchasing manager's duties appear to be largely administrative and ministerial in nature. (Def. Ex. B; Def. Ex. C. at 32.) Even if the purchasing manager was responsible for significant policymaking, Defendants present no evidence that the manager's party affiliation would affect her job performance. The Court therefore denies summary judgment on this basis.

### 3. *Monell Claim Against City of Reading*

■ Defendant City argues that Plaintiff failed to plead a claim for municipal liability under *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court will address this issue as framed by the parties, that is in the context of sufficiency of the pleadings, rather than a deficiency of evidence.[3]

Municipal entities may not be held liable under § 1983 for injuries inflicted solely by its employees or agents on a respondeat superior theory of liability. *Id.* at 691, 98 S.Ct. 2018. Liability may attach, however, to the local government where the individual accused of effecting the deprivation of the constitutional right has policymaking authority rendering his behavior an act of official government policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether an individual has final policy-making authority for a municipality is a question of state and/or local law. *Id.* at 483, 106 S.Ct. 1292.

---

**3.** Accordingly, the Court will dismiss the claim only if Plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). Only those facts alleged in the Amended Complaint will be considered and all of the allegations will be accepted as true. *Id.*

The Amended Complaint alleges that the Mayor developed a "hit list" of city employees whom they regarded as political enemies, with the intent to terminate those employees in retaliation for their support of comprehensive trash collection. (Am. Compl.¶ 39.) These allegations assert that the Mayor established a custom or policy of eliminating political opponents, and that Ballas' termination was a result of this custom or policy. Furthermore, Mayor Eppihimer is a municipal official with the authority to make policy. *See Bartholomew v. Fischl*, 782 F.2d 1148, 1153 (3d Cir.1986). Accordingly, the Court determines that the Amended Complaint states a claim against the City because Mayor Eppihimer's acts represent official policy, and therefore denies summary judgment on Count II against the City.

### 4. *Qualified Immunity*

■ Defendant Pena reasserts qualified immunity to Count II on the basis that the evidence fails to establish a knowing violation of the law or that his actions were objectively unreasonable. Pena previously raised this issue on a motion to dismiss. Because of the absence of evidence regarding the objective reasonableness of Pena's actions, the Court declined to grant Pena qualified immunity at that time. *See Ballas*, 2001 WL 73737, at \*9. In the context of the instant Motion, however, the Court agrees that Pena is entitled to qualified immunity.[4]

Government officials have qualified immunity from suit under § 1983 so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir.1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982)). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The defendant has the burden of pleading and proving qualified immunity. *Harlow*, 457 U.S. at 815, 102 S.Ct. 2727.

When resolving issues of qualified immunity, a court must first determine whether the plaintiff has alleged a deprivation of a constitutional right. *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998) (internal citations omitted). Only after satisfying that inquiry should the court then ask whether the right allegedly implicated was clearly established at the time of the events in question. *Id.* The Court concluded earlier in this opinion that Plaintiff may proceed to trial on her claim that her discharge violated the First Amendment. To be clearly established, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. *Karnes v. Skrutski*, 62 F.3d 485, 492 (3d Cir.1995). The Court previously determined that Ballas' right not to suffer termination in retaliation for exercise of her First Amendment rights was clearly established at the time of her discharge in April, 2000. *See Ballas*, 2001 WL 73737, at \*9.

The salient question, therefore, is whether Pena's conduct was objectively reasonable in light of pre-existing law as measured by the amount of knowledge available to him at the time of his actions. *Anderson v. Creighton*, 483 U.S. 635, 649, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Giuffre v. Bissell*, 31 F.3d 1241, 1252 (3d Cir.1994). Pena submits evidence that he

---

4. Having reached this conclusion, the Court declines to address Pena's alternate argument.

was told Ballas was terminated for her insubordinate attitude towards the Mayor, and the purchasing department was targeted for staff reductions because of a perceived overstaffing. (Def. Ex. H at 64; Pl.Ex. G at 56, 59–64.) Pena also submits evidence that he did not make the decision to terminate Ballas, but merely carried out the administrative tasks to discharge her pursuant to Mayor Eppihimer's orders. (Def. Ex. A at 224.) Plaintiff fails to submit any admissible evidence in rebuttal that indicates that Pena knew of any improper motive with respect to Ballas' termination. Since there is no evidence from which a jury reasonably could conclude that Pena knew that Ballas was being terminated on the basis of her or Lessig's speech, the Court determines that Pena is entitled to qualified immunity on Count II, and dismisses Count II as against Defendant Pena.

### B. State Law Claims

■ Counts V and VI allege that Ballas was wrongfully terminated in violation of City Charter sections 603 and section 702 respectively. Count VII alleges wrongful termination in violation of City Charter sections 406, 603, and 701, and public policy against retaliation for political views. Count VIII is a claim for retaliatory discharge based on Ballas' support of comprehensive trash collection. Count IX alleges intentional termination in violation of the City Charter. Lessig advances Count X for loss of consortium. All of these counts remain only against Pena.

Defendant Pena argues he is immune to liability under Counts V through X pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("Tort Claims Act" or "Act"). The Act exempts local agencies from liability for damages for any injuries caused by acts of the agency or its employ-

ees. 42 Pa. Cons.Stat. Ann. § 8541 (West 2001). Injured parties may recover in tort from a municipality only if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories. 42 Pa. Cons.Stat. Ann. § 8542 (West 2001); *Swartz v. Hilltown Township Volunteer Fire Co.*, 721 A.2d 819, 820–21 (Pa. Commw.Ct.1998). The eight exceptions to the legislative grant of immunity are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) care, custody, or control real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 Pa. Cons.Stat. Ann. § 8542(b) (West 2001). The Act further extends immunity from liability to officials acting within the scope of their duties to the same extent as the local agency, except for acts constituting a crime, actual fraud, actual malice or willful misconduct. 42 Pa. Cons.Stat. Ann. §§ 8545, 8550 (West 2001).

Pena raised this argument earlier in a motion to dismiss. At that time, the Court rejected his argument based on the allegations of willful misconduct in the Amended Complaint. *See Ballas,* 2001 WL 73737, at *10. The Court now determines that the parties submissions contain no admissible evidence to support a finding of actual malice or willful misconduct with respect to Ballas' termination. Since Ballas' claims do not otherwise fall within one of the Act's exceptions, Pena is immune from liability on the state law claims pursuant to the Tort Claims Act.[5] Therefore the Court dismisses Counts V through X against Pena.

---

5. Having reached this conclusion, the Court declines to consider Pena's other arguments.

## IV. CONCLUSION

In summary, the Court grants in part and denies in part Defendants' Motion for Summary Judgment. Count II will proceed to trial against Defendant City of Reading and Joseph Eppihimer. Plaintiff Maria Ballas may seek injunctive relief pursuant to Count XI. An appropriate Order follows.

### ORDER

**AND NOW**, this 12th day of June, 2001, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 39) and all attendant and responsive briefing, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** in part and **DENIED** in part:

1. Counts V, VI, VII, VIII, IX, and X are dismissed in their entirety against Joseph Pena on immunity grounds; and

2. Count II is dismissed as against Joseph Pena on the ground of qualified immunity.